**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Scott Eric HARRIS, Defendant-Appellant.**

**No. 72-3120.**

United States Court of Appeals, Fifth Circuit.

June 4, 1973.

Louis Vernell, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Robert Norris Reynolds, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, GEWIN and CLARK, Circuit Judges.

GEWIN, Circuit Judge:

On May 18, 1972, a two-count indictment was returned charging appellant Scott Harris with two violations of the Dyer Act.[1] On August 2, 1972, Harris' first trial resulted in a deadlocked jury; thus the district court declared a mistrial. Subsequently on August 15, a newly empaneled jury found Harris guilty of both counts. After denying Har-

ris' motion for a new trial, the district court sentenced him to 30 months on each count, the sentences to run concurrently.

The crucial issue presented by Harris on this appeal is whether the trial court erred in refusing to suppress the evidence allegedly seized by an officer of the Los Angeles City Police Department from the glove compartment of the stolen automobile which Harris possessed at the time of his arrest. A peripheral problem, but one which is necessarily interrelated with the legal resolution of this controversy, is the propriety of the district court's decision to reconsider its previous order suppressing certain evidence on the Government's representation that further testimony would clarify the circumstances surrounding the seizure. We affirm.

Prior to Harris' first trial, he made a motion to suppress evidence seized at his arrest on the basis that the seizure was without probable cause and thus violated the fourth amendment. Accordingly, the lower court held a suppression hearing to determine whether the seizure by the arresting officers could pass constitutional muster.

Since there was admittedly no search warrant issued, the burden of proof was on the Government to sustain the validity of the arresting officers' actions.[2] It was incumbent on the Government to show that the circumstances surrounding the arrest eliminated the necessity for a search warrant. The Government presented only the testimony of Wolfgang P. Weinzierl, one of the arresting officers. Officer Weinzierl testified that on December 15, 1971, he and his patrol partner, Thomas Isgrigg, observed Harris, while he was driving a 1972 Lincoln Continental, make an illegal left turn off Van Nuys Boulevard in

1. Count one of the indictment charged that Harris had transported a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312. Count two charged that Harris "did receive, conceal, store, barter, sell, and dispose of a stolen motor

vehicle" in interstate commerce in violation of 18 U.S.C. § 2313.

2. See Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Williams v. United States, 382 F.2d 48, 50 (5th Cir. 1967).

Pacoima, California. The officers pursued Harris and proceeded to issue him a routine traffic citation.

After the officers stopped the automobile, Harris alighted and walked to the rear toward the police cruiser. Both officers got out of the cruiser and in response to a request for his drivers license and automobile registration by Isgrigg, Harris presented his drivers license and Isgrigg commenced to write out the traffic citation.

While Isgrigg made out the citation, Weinzierl radioed for a check of Harris' license plates to the National Crime Information Center (N.C.I.C.) to determine if they were stolen. Approximately a minute later the N.C.I.C. responded that the license plates were indeed stolen. Weinzierl testified that he immediately proceeded to the passenger side of Harris' automobile and asked the other occupants to get out. They joined Harris at the rear of the automobile.

At this point, Harris was placed under arrest for auto theft. Weinzierl testified that Isgrigg then proceeded to search the glove compartment for registration and title papers. He removed the papers and displayed them to Weinzierl who was standing behind him at the rear of the automobile with Harris and the other passengers. Weinzierl informed the lower court that neither he nor Isgrigg sought or was given permission for the glove compartment search.

Officer Weinzierl stated he further sent in the vehicle identification number of the 1972 Lincoln Continental which was on the automobile registration paper to verify his suspicions that it was stolen. Since the number had been altered, the N.C.I.C. replied that the number did not correspond with any stolen vehicle. Thus Weinzierl's testimony revealed that even though Harris was arrested for grand theft of an automobile, an initial check negated this conclusion.

After reviewing the apparent facts underlying the search established by Weinzierl's testimony, the trial court ordered the evidence seized from the vehicle's glove compartment suppressed. The court concluded that once the officers decided to arrest Harris on the basis of the N.C.I.C. report and impound the automobile, the only issue which remained regarding fourth amendment search limitations was "whether or not there is time enough—that is, opportunity to obtain a search warrant." Answering in the affirmative, the lower court concluded that under the factual circumstances presented a prior search warrant should have been obtained.[3]

Harris' first trial then ensued resulting in a mistrial. Prior to the second trial, the Government moved the trial court to reconsider its suppression order.[4] At this second hearing the Government offered the testimony of Officer Isgrigg to sustain the validity of the con-

---

3. We have no cause to review the correctness of the lower court's conclusion. However, in view of the information from the N.C.I.C. that the license plates were stolen a strong argument could be made to sustain a search of the vehicle. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Pearson, 448 F.2d 1207 (5th Cir. 1971); United States v. Johnson, 431 F.2d 441 (5th Cir. 1970) (en banc) affirming 413 F.2d 1396 (5th Cir. 1969); United States v. Jackson, 429 F.2d 1368 (7th Cir. 1970). At oral argument, in response to questions by the court, government counsel stated that the government did not appeal from the initial suppression order

because the motion to suppress came late and the order was issued after the trial jury had been selected. The government felt that jeopardy had probably attached at that point.

4. In its motion to reconsider the government alleged, among other facts, the following:
COMES NOW the United States of America by and through its undersigned United States Attorney and respectfully petitions this Honorable Court to reconsider its judgment entered on August 1, 1972, suppressing certain physical evidence in the above styled cause on the grounds that:
1. Defendant's Motion for Suppression was not filed nor did the govern-

tested search. Isgrigg testified that he requested Harris to give him the automobile registration papers so he could complete the traffic citation form. This request was made prior to Harris' arrest. Isgrigg stated that Harris readily agreed to the request and they went to the passenger side of Harris' automobile where his wife produced the papers from the glove compartment. Upon receipt of the registration papers, Isgrigg completed the citation. He placed Harris under arrest only after Weinzierl informed him the plates were stolen and removed the other occupants from the automobile, placing them under arrest. Following the arrests he determined that the automobile would have to be impounded and requested the trunk key from Harris so he could make a routine inventory of its contents. Harris replied that he had lost the keys but that the trunk lid could be raised by means of a button inside the glove compartment. Isgrigg got into the car and opened the glove compartment for the purpose of raising the trunk cover.

Thus by Isgrigg's version of the arrest, the Government attempted to show that Harris had readily consented to a production of the automobile registration papers for the purpose of completing a routine traffic citation. At this hearing counsel for Harris strenuously objected to the testimony of Isgrigg asserting that it directly contradicted the testimony of Weinzierl given at the prior hearing. Harris' counsel argued that the Government should not be allowed to impeach its own witness especially since the Government had not suggested that it was surprised by Weinzierl's version at the previous suppression hearing. Defense counsel finally asserted that since the two officers' testimony had completely discredited the Government's attempt to prove that the search was permissible that the testimony given at the previous hearing by Harris and his wife should be given added weight.[5]

The trial court noted that Isgrigg's testimony had completely changed the complexion of the suppression issue. He observed that Isgrigg's version was particularly relevant since he had dealt directly with Harris in issuing the citation, while Weinzierl was involved with other duties such as calling in the license plates to the N.C.I.C. The court decided to credit Isgrigg's version noting that Weinzierl was not immediately present when the transfer of the registration papers occurred. The court stated that it was a completely proper and customary procedure to request a driver's automobile registration papers for the purpose of completing a traffic citation.

■ Harris here contends that the district court committed reversible error by entertaining the Government's motion to reconsider the court's previous suppression order. The basis for this as-

ment have knowledge of the contents of said motion until the day originally set *down for trial.*

2. Any and all government witnesses who had knowledge of the events which were the subject of the suppression hearing resided in and had to come from the State of California.

3. As a result of the untimely filing of defendant's motion the government was unaware of any problems which might arise concerning the suppressed evidence for the reason that the suppressed documents had never been put in issue prior to filing of the suppression motion.

4. The witnesses having knowledge of the seizure of the suppressed physical evidence had not been interviewed with respect to said seizure prior to the filing *by defendant of his suppression motion* for the reason that any and all pretrial motions by defendant were ordered due by United States Magistrate Peter R. Palermo within twelve days of said magistrate's order of July 11, 1972, to-wit: July 23, 1972, and the motion by defendant not being filed until eight days thereafter. . .

5. At the first suppression hearing Harris testified that Isgrigg had removed the registration papers from his glove compartment after he was arrested and handcuffed.

sertion is that the Government was thereby improperly allowed to impeach one of its previous witnesses. Additionally by adopting literally Weinzierl's version of the arrest, Harris contends that Isgrigg's apparent seizure of the contents in the glove compartment violated the fourth amendment. After a painstaking and tedious review of the testimony given at both suppression hearings we perceive no error as a result of the district court's reversal of its prior suppression order. Although conflicting in some respects, Isgrigg's testimony is reconcilable with Weinzierl's previous statements with respect to the crucial issue presented. Furthermore, giving credence to the testimony of Isgrigg removes the necessity of responding to Harris' second contention.

First, viewing the testimony of both officers as a whole, we feel that their accounts of the circumstances surrounding the arrest are not necessarily in irreconcilable conflict and thus the Government did not impeach the testimony of its previous witness. We will not attempt to reconcile every statement given by Weinzierl with those of Isgrigg. They gave their testimony over eight months after the arrest and therefore it can not be expected that they could recall every detail of the arrest or reconstruct all of the events exactly alike. Further we note that Weinzierl was present when Isgrigg testified and it is rather perplexing that Harris never sought to call Weinzierl if he felt that somehow the Isgrigg version of the arrest was completely contradictory of the version formerly given by his fellow officer.

Integrating the testimony given by the two officers, we feel that the following summary adequately explains the circumstances surrounding the production of the registration papers. While Weinzierl radioed in the license plate number, Isgrigg requested the registration papers so he could complete the traffic citation. Thus while Weinzierl busied himself on the radio, Harris' wife produced the papers from the glove compartment at her husband's request. The two men then returned to the front of the police cruiser where Isgrigg completed the citation.

After being informed by his partner that the license plates were stolen which led to the arrest of Harris, Isgrigg determined that the Lincoln Continental would have to be impounded and asked Harris for the trunk keys so he could make a routine inventory of the car's contents. Harris responded that he had lost the keys but that the trunk cover could be raised by using a button in the glove compartment. Isgrigg proceeded to the glove compartment to open the trunk. Weinzierl mistakenly believed that his partner was at that time searching the glove compartment for the automobile registration papers since he had not witnessed the previous production of the papers by Harris' wife. In short, it appears that Weinzierl correctly testified to what he saw at the scene of the arrest but merely misinterpreted the meaning of these objective acts.

The facts surrounding the search thus reveal that Harris consented to a production of the registration papers for the purpose of completing the traffic citation. Consent is a question of fact,[6] and the lower court's determination of the facts which surrounded the instant arrest cannot be said to be clearly erroneous.[7]

The judgment of the district court is affirmed.

6. See Perkins v. Henderson, 418 F.2d 441, 442 (5th Cir. 1969); Landsdown v. United States, 348 F.2d 405, 410 (5th Cir. 1965).

7. See United States v. Resnick, 455 F.2d 1127, 1133 (5th Cir. 1972).