**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Nick REGILIO and Guillermo
Saint Blancard,
Defendants-Appellants.**

**Nos. 81–1618, 81–1627.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1981.

Decided Dec. 28, 1981.

Rehearing and Rehearing En Banc
Denied Feb. 18, 1982.

Certiorari Denied June 21, 1982.
See 102 S.Ct. 2959.

one charged Saint Blancard with knowingly and intentionally distributing cocaine on May 19, 1980, in violation of 21 U.S.C. § 841(a)(1). Count two charged all three defendants with knowingly and intentionally distributing cocaine on June 12, 1980, in violation of 21 U.S.C. § 841(a)(1). On December 15, 1980, Saint Blancard was convicted on both counts after a stipulated bench trial. On that same day the jury trial of defendant Regilio commenced. The jury was unable to reach a verdict, and the court declared a mistrial. Regilio was retried, and the second jury found him guilty.[1] Regilio and Saint Blancard appeal. For the reasons stated in this opinion, we affirm.

I

Saint Blancard raises one issue in his appeal. He claims that the district court erred in denying his pretrial motion to dismiss the indictment with prejudice. Saint Blancard contends that the case was not brought to trial within seventy days of his arraignment, as required by the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* and that dismissal with prejudice was the appropriate remedy. 18 U.S.C. § 3162.

Saint Blancard was arraigned on August 15, 1980. The case was set for trial on September 15, 1980, but defense counsel and the Government requested a continuance, and the trial was then set for October 14, 1980. On August 27, 1980, defendant filed five pretrial discovery motions. On September 22, 1980, the case was reassigned to a different judge, the Honorable John F. Grady, who set the trial for October 27, 1980. On that date, however, the trial was continued on a day-to-day basis. On November 12, 1980, the Government advised the court that Saint Blancard's pretrial motions were still pending. The court indicated that it had dictated a ruling on those motions on September 22, but apparently the order was never prepared. The court

Canella E. Henrichs , Asst. U. S. Atty., Dan K. Webb, Robert Walter Torun, U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Patrick A. Tuite, Raymond Cisco, Carey, Cisco & Organ, Chicago, Ill., for defendants-appellants.

Before SPRECHER, BAUER and WOOD, Circuit Judges.

BAUER, Circuit Judge.

Robert Nick Regilio, Guillermo Saint Blancard, and Clayton Cluchey were charged in a two-count indictment with violating the federal narcotics laws. Count

1. On December 3, 1980, defendant Cluchey's defense counsel informed the district court that Cluchey would not be available for trial scheduled December 15, 1980, and that his whereabouts were unknown. To the best of our knowledge, Cluchey is still a fugitive from justice.

set trial for November 24, 1980. The order denying the pretrial discovery motions was issued on November 17, 1980. On November 24 trial was reset for December 1. On December 1 the trial was set over for December 15 because the court was otherwise engaged. On December 3 codefendant Cluchey's counsel advised the court that Cluchey would be unavailable for trial and that his whereabouts were unknown. On December 15, 1980, Saint Blancard moved to dismiss the indictment. The district court denied the motion and proceeded to trial.

The Speedy Trial Act requires the Government to proceed to trial within seventy days of arraignment or the indictment must be dismissed. 18 U.S.C. §§ 3161(c)(1), 3162(a)(2). In computing whether the seventy day deadline has been met, the statute provides that certain periods of delay may be excluded. 18 U.S.C. § 3161(h). Absent any such excludable time, Saint Blancard's trial should have commenced by October 24, 1980. The trial, however, did not commence until December 15, 121 days after arraignment. The district court found that the overlapping periods from August 15 through September 8, August 27 through November 17, September 15 through October 14, and December 3 through December 14 were excludable, thus making the computable time from arraignment to trial fifteen days. Saint Blancard claims that the court erred in computing the excludable periods and that a proper computation indicates that his trial commenced ninety-three days after arraignment.

The district court excluded the eighty-one days from August 27, when Saint Blancard filed his pretrial motions, through November 17, when the order denying the motions was issued, on two separate grounds. The first sixty days were excluded pursuant to 18 U.S.C. § 3161(h)(1)(F) which provides that delay resulting from the filing of any pretrial motion to its prompt disposition is excludable time. The remaining twenty-one days were excluded pursuant to 18 U.S.C. § 3161(h)(8)(A) which provides that delays resulting from continuances granted in the interest of justice are excludable. Saint Blancard contends that only thirty

days, not sixty, should be excluded pursuant to § 3161(h)(1)(F) because thirty days is a reasonable time in which to rule on routine pretrial discovery motions. He further argues that the remaining fifty-one days should not be excluded because administrative errors should not be charged against the defendant.

Section 3161(h)(1)(F) does not specify the number of days excludable for prompt disposition of pretrial motions. In fact, Congress specifically rejected a proposal that § 3161(h)(1)(F) have a thirty-day maximum time limit. *See* 1974 U.S. Code Cong. & Admin. News 7401 at 7425–26. Under some circumstances, eighty-one days may be necessary to dispose of pending pretrial motions that are numerous or complex. *See United States v. Brim*, 630 F.2d 1307, 1312–13 (8th Cir. 1980) (fifty-seven days properly excludable pursuant to § 3161(h)(1)(F)). We need not decide in this case, however, whether the entire eighty-one days was excludable for disposition of pretrial motions, for we agree with the district court that some of the time was properly excluded pursuant to this provision and the remaining amount was excludable in the interest of justice. 18 U.S.C. § 3161(h)(8)(A).

In reaching its decision, the district court balanced several factors and concluded that the interest of justice would be served by excluding the remaining time. The court noted:

> So the Court has to weigh the interests of the public in a speedy trial, the interests of the public in the prosecution of criminal offenses for the protection of society; any possible prejudice to the defendant from the delay, any activity on the part of the defendant designed to evidence dissatisfaction with the delay or the fact that he was experiencing any prejudice; and also to consider the clerical mishap which is the occasion for the delay.

We agree. Saint Blancard has failed to indicate that he was prejudiced by the delay. He knew the pretrial motions were pending and did nothing to bring this mat-

ter to the district court's attention. Instead, he stood silent until the Government requested a ruling on the motions. *See United States v. Carreon*, 626 F.2d 528, 533–34 (7th Cir. 1980). Moreover, the crimes with which Saint Blancard was charged are serious. Without a doubt, the public has a strong interest in prosecuting narcotics dealers. Under these circumstances, we find that the district court did not err in excluding the entire eighty-one days from computation of the time between arraignment and trial. Excluding this period, Saint Blancard's trial was commenced within forty days.[2] We find that the Speedy Trial Act was not violated, and thus the district court did not err in denying Saint Blancard's motion to dismiss the indictment.

## II

Defendant Regilio challenges his conviction on four grounds. He claims (1) that the district court erred in admitting certain hearsay statements pursuant to the co-conspirator hearsay exception; (2) that the court erred in admitting evidence at the second trial that it had suppressed at the first trial; (3) that the court erred in giving an instruction that defined "reasonable doubt" and in failing to give Regilio's tendered co-conspirator hearsay instruction; and (4) that the evidence is insufficient to support the verdict.

The drug transaction which gave rise to this prosecution occurred on June 12, 1980. On that day, Saint Blancard made arrangements to sell Special Agent Gary Slowik four ounces of cocaine. They agreed during a phone conversation to meet at 8:45 p. m. in the parking lot of JoJo's Restaurant, Hillside, Illinois. Saint Blancard assured Agent Slowik that he had heard from his man Bob that the four ounces were available.

As pre-arranged, at approximately 8:45 p. m. Agent Slowik arrived in an unmarked car and parked in the JoJo's Restaurant lot. Saint Blancard arrived a few minutes later in his automobile and parked behind Slowik's car. Saint Blancard informed Slowik that they would have to take a ride somewhere to pick up the cocaine. Slowik told Saint Blancard that he would not leave the area and that if the transaction was going to take place, it was going to take place right where they were. Saint Blancard told Slowik that they would have to get closer to "his man Bob." Slowik insisted that they stay near the restaurant, to which Saint Blancard replied, "Okay, I will go call my man Bob, I will go into the restaurant, call my man Bob, and see if he can bring the coke here."

Saint Blancard entered the restaurant and five minutes later returned to Agent Slowik's car. Saint Blancard told Slowik that he had talked to his man Bob and that Bob was on his way to the restaurant with the cocaine. Slowik asked Saint Blancard from where Bob was coming, and Saint Blancard replied, "Addison."

Saint Blancard went to his car for a few minutes and then re-entered the restaurant. Ten minutes later, Saint Blancard returned to his car and sat on the hood. Just prior to Saint Blancard's exiting the restaurant, Clayton Cluchey, driving a yellow Oldsmobile, entered the JoJo's lot where he parked three spaces east of Agent Slowik's car. Cluchey did not get out of his automobile.

About ten minutes later, defendant Regilio arrived at JoJo's parking lot in a brown Ford and parked directly behind Saint Blancard's car. Saint Blancard got in the passenger side of Regilio's Ford, and Regilio then drove out of the lot. After circling the restaurant, the two re-entered JoJo's parking lot and parked about four spaces north of Slowik's car. Both Saint Blancard

---

2. Saint Blancard also claims that the periods from August 15 through September 8, September 15 through October 14, and December 3 through December 15 were also erroneously excluded from computation. We need not decide this issue for even assuming Saint Blancard is correct that the court erred in excluding these periods, the first two periods are contained within the 81 day period properly excluded pursuant to 18 U.S.C. § 3161(h)(1)(F) and § 3161(h)(8)(A). Excluding only this 81 day period, Saint Blancard was tried within 40 days of arraignment, clearly within the 70 day requirement of the Speedy Trial Act.

and Regilio got out of Regilio's car, and Saint Blancard walked toward the entrance of the restaurant while Regilio walked back over and got into Cluchey's yellow Oldsmobile. After a brief conversation with Cluchey, Regilio left the Oldsmobile and entered the restaurant.

Cluchey then got out of his car, walked to the trunk, and removed a gym bag. He re-entered his car and bent over, appearing to take something out of the bag. He then left his car and went into JoJo's, at which point he, Saint Blancard, and Regilio were all inside the restaurant.

Five minutes later, Cluchey left the restaurant and got into the Oldsmobile. Saint Blancard next exited the restaurant and returned to his automobile. Saint Blancard moved his car next to Agent Slowik's. While Saint Blancard was moving his car, Regilio left JoJo's and stood near the southwest corner of the restaurant. From that spot, Regilio looked in the direction of Slowik's and Cluchey's cars in the restaurant parking lot.

Saint Blancard asked Slowik to get into his car. Slowik insisted that they sit in his car. Saint Blancard went over and got into Slowik's car. When Slowik asked Saint Blancard why the transaction was taking so long, Saint Blancard offered that the delay was a little diversion. Slowik then asked him if he had the four ounces of cocaine. Saint Blancard said he had and removed a white sweat sock from his left sock, which he gave to Slowik. Slowik opened the sock and removed two clear plastic bags containing 110.7 grams of cocaine. After expressing his approval, Slowik went to his trunk to get the money.

Before re-entering his car, Slowik gave a prearranged arrest signal. Once in the car, Slowik removed the money from an envelope and placed it on the seat next to Saint Blancard. After Saint Blancard began to count the money, Slowik arrested him.

When the arrest signal was given, the surveillance cars moved toward the parking lot with their lights flashing. Regilio began walking briskly away from his car toward some houses. Surveillance officers converged on the scene and arrested Regilio as he approached a grassy area away from the restaurant and parking lot. Cluchey was also arrested and the gym bag, which he had removed from his trunk and which had traces of cocaine, was recovered from the rear seat of his Oldsmobile.

## A

Regilio claims that the district court erred in admitting Saint Blancard's hearsay statements that he was going into the restaurant to call his man Bob about the cocaine and that Bob was coming from Addison.[3] These statements were admitted pursuant to rule 801(d)(2)(E), Fed.R.Evid., and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), which permit introduction of hearsay statements of co-conspirators only if the existence of a conspiracy and the defendant's participation have been proven by a preponderance of independent evidence and if the statements were made in furtherance of the conspiracy. Regilio claims that the Government failed to prove by a preponderance of independent evidence that he participated in a joint venture to sell cocaine.[4] Moreover, he contends that even if the Government met its burden of proof, the admitted hearsay statements were not made in furtherance of the conspiracy. Finally, he argues that these statements should not have been admitted because Regilio was not afforded the right to confront the witness against him since Saint Blancard, the hearsay declarant, did not testify.

---

**3.** Evidence introduced at trial indicated that Regilio is referred to as "Bob" by his wife and some of his acquaintances and that Regilio resides in Addison. It is apparent why Regilio sought to prevent admission of Saint Blancard's declaration that Bob from Addison was his cocaine source.

**4.** The co-conspirator hearsay exception applies with equal force to joint ventures. *See United States v. Santiago*, 582 F.2d 1128, 1130 (7th Cir. 1978).

The Government presented substantial independent circumstantial evidence which, when viewed in the light most favorable to the Government, established by a preponderance of the evidence that Regilio, Saint Blancard, and Cluchey were participating in a joint venture to distribute cocaine. Mrs. Regilio stipulated that Regilio knew Saint Blancard. The Government introduced the Illinois Bell subscription records for Saint Blancard's telephone for June 11 & 12, 1980, which reflect that several calls were made to Regilio's telephone number. The records from June 12 are particularly informative. There were four calls to Agent Slowik's number and four calls to Regilio's number, some of which followed each other in close succession. At 6:30 p. m. Saint Blancard called Slowik to tell him that he had four ounces of cocaine for sale. Ten minutes later, a call was made from Saint Blancard's phone to Regilio's number. At 7:15 p. m. Saint Blancard called Slowik to arrange the 8:45 meeting at JoJo's Restaurant. Eight minutes later a call was made to Regilio's number. Fifty minutes later Saint Blancard called Slowik to confirm that the deal was set for 8:45. Moreover, the evidence introduced concerning the actual transaction showed Regilio's contact with the co-conspirators. He conversed with Cluchey, who delivered the cocaine, and with Saint Blancard, who made the sale. He was present in the restaurant for the short while in which all three were inside, and presumably when Cluchey gave the cocaine to Saint Blancard. Before Cluchey's arrival, Regilio and Saint Blancard drove around the restaurant in what appears to have been a reconnaissance effort. Finally, Regilio positioned himself to observe the sale and attempted to flee when the police converged on the parking lot.

The type and breadth of evidence introduced in this case is strikingly similar to that which we found sufficient in *United States v. Dalzotto*, 603 F.2d 642 (7th Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979), to satisfy the Government's burden of proving the existence of and the defendant's participation in a conspiracy to distribute narcotics. The only evidence linking defendant Young to co-conspirators Holden and Dalzotto was (1) records of several phone calls placed between Holden and Young's telephone prior to the drug transaction; (2) the fact that Young met Holden and Dalzotto on the side of the road just prior to the sale and Young and Dalzotto then left together; (3) evidence that when Holden was arrested he had a slip of paper on which was the name of a tavern, Young's name, and 8:00; and (4) Holden's testimony that he met Young at 8:00 to obtain the drugs. While affirming the general rule that mere presence at the scene of a crime or association with conspirators is insufficient to establish participation, 603 F.2d at 645, we held that "Dalzotto and Young's presence together prior to the February 11 sale, and their several dealings with Holden, were cumulatively sufficient to make the existence of a conspiracy more likely than not." *Id.* at 646. We further held that the district court did not err in admitting Dalzotto's out-of-court declaration that Young was his drug source.

Similarly, in this case, we find that the evidence sufficiently establishes Regilio's participation in the conspiracy. This is not a "mere presence" case as Regilio argues. We have evidence of presence, suspicious behavior, and significant prior dealings. As the district court noted:

Now the meeting between [Saint Blancard] and Regilio is just too suspicious in terms of time, place and character to be regarded as innocent. I mean, you would have to be incredibly naive to be able to reconcile Regilio's activities with the hypothesis that he was unaware of what was going on there and that his presence was unrelated to what was going on.

Regilio claims that even if the evidence was sufficient to prove his participation in the conspiracy, the statements in question were not uttered in furtherance of the conspiracy, and, thus, they should not have been admitted against him. Regilio argues that the statements identifying the source and his location did not further the sale of the cocaine because the objectives of the con-

spiracy were satisfied once Saint Blancard and Slowik agreed to the sale. They had reached agreement concerning the amount of the transaction before Saint Blancard revealed the name and location of his source.

In support of his position, Regilio cites *United States v. Gandara*, 586 F.2d 1156 (7th Cir. 1978), in which we held that once agreement to sell narcotics has been reached, the objectives of the conspiracy are satisfied and statements identifying the source are surplusage. *Id.* at 1159. In this case, however, the deal was not set when Saint Blancard made the statements in issue. Saint Blancard informed Slowik when they met at 8:45 that the deal had changed and that they would have to go someplace else. Slowik made it clear that he would back out of the sale unless it occurred at JoJo's. At this point, Saint Blancard told Slowik he would have to call his man Bob. After the call, Saint Blancard said Bob was on his way. In order to find out how long he would have to wait, Slowik asked from where Bob was coming. It is reasonable to conclude that Saint Blancard feared that Slowik might cancel the sale if he thought he would have to wait a long time for the cocaine to be delivered to the restaurant, and that Saint Blancard, unaware that Slowik was an undercover agent, uttered these statements in an effort to keep Slowik in the deal. *See United States v. Gil*, 604 F.2d 546, 548 (7th Cir. 1979); *United States v. Knippenberg*, 502 F.2d 1056, 1061 (7th Cir. 1974). We agree with the district court that these statements were uttered in furtherance of the conspiracy to distribute cocaine.

Finally, we are unimpressed by Regilio's claim that he was deprived of his right to confront the witness against him. The confrontation clause does not prohibit introduction of hearsay statements if they are reliable. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). As we held in *United States v. Papia*, 560 F.2d 827,

836 n.3 (7th Cir. 1977), "the community of interest of the conspirators evidences likelihood of reliability." These statements were reliable and material, and the district court did not err in admitting them. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

### B

After Regilio was arrested at JoJo's Restaurant, he was taken to the police station to be booked. He was informed of his *Miranda* rights. Regilio stated that he did not wish to make any statement and that he wanted to consult with an attorney. The police gave him a waiver of rights form and asked him to initial each warning and sign a statement indicating that he did not wish to waive his rights. Regilio placed the initials "B.R." after each of the specific *Miranda* warnings and signed the form "Robert Nick Regilio".

Prior to the first trial, Regilio filed a motion to suppress the initials and signature as obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court granted the motion and the Government did not appeal.[5] After the first trial ended in a mistrial, the Government moved the district court to reconsider its suppression order. The district court granted the motion and ruled that the evidence was not obtained in violation of *Miranda* and thus should not have been suppressed. The court permitted the Government to introduce this evidence at the second trial. Regilio claims that the court erred in reconsidering its prior suppression order and that it erred in finding that there was no *Miranda* violation.

Regilio's appeal on this issue presents a question of first impression in this circuit. The only decision on this issue of which we are aware is a Fifth Circuit case. In *United States v. Harris*, 479 F.2d 508 (5th Cir. 1973), the Fifth Circuit held that the district court did not err when it

---

5. 18 U.S.C. § 3731 authorizes the Government to appeal a pretrial suppression order within 30 days of entry of the order.

reconsidered its pretrial suppression order after a mistrial and reversed the original order. We agree. If the district court denies a pretrial motion to suppress and matters appearing at trial cast doubt on the pretrial ruling, the court must reconsider the issue of suppression *de novo*. *United States v. Jones*, 438 F.2d 461, 467 (7th Cir. 1971) (citations omitted). We see no reason why this rule should not be expanded to require the district court to reconsider its pretrial order if it granted the motion to suppress and matters revealed later indicate that the ruling may have been erroneous. The defendant is entitled to have evidence suppressed only if it was obtained unconstitutionally. If matters appearing later indicate that no constitutional violation occurred, society's interest in admitting all relevant evidence militates strongly in favor of permitting reconsideration. *See United States v. White*, 607 F.2d 203, 205 (7th Cir. 1979), *cert. denied*, 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed.2d 843 *reh. denied*, 452 U.S. 974, 101 S.Ct. 3131, 69 L.Ed.2d 986 (1981), in which the district court on the Government's motion reconsidered a suppression order before trial and reversed its earlier ruling. *See also United States v. Covello*, 657 F.2d 151 (7th Cir. 1981) (Government's motion to reconsider suppression order granted).

Alternatively, Regilio argues that even if the district court had authority to reconsider its suppression order, its decision to reverse its earlier ruling is erroneous. Regilio told the police officers that he wished to consult with an attorney before he made any statements. At that point, custodial interrogation must cease. *Miranda v. Arizona*, 384 U.S. at 474, 86 S.Ct. at 1627. Thereafter, the police asked Regilio to initial and sign the waiver form. Regilio claims that this request was continued interrogation. He argues that the initials were a statement that "my initials are B.R."—a statement obtained in violation of *Miranda*. We need not decide whether initials are in fact testimonial for we hold that no interrogation occurred and thus *Miranda* is inapplicable.

The procedural safeguards elaborated in *Miranda* apply only "where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). " 'Interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police *(other than those normally attendant to arrest and custody)* that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689 (footnotes omitted) (emphasis added). Regilio was in police custody, but he was not subject to *Miranda* interrogation when he initialed and signed the waiver of rights form. Police are required to give *Miranda* warnings, and if a suspect makes a statement, the government bears the burden of proving at trial that the statement was made following a voluntary, knowing, and intelligent waiver of *Miranda* rights. Police routinely use waiver forms, which the suspect either signs or initials or both, to indicate that the warnings were in fact given by the police and understood by the suspect. This procedure, no less than routine fingerprinting and inventorying of a suspect's property, is "normally attendant to arrest" and is not interrogation. *United States v. Prewitt*, 553 F.2d 1082, 1085 (7th Cir.) (per curiam), *cert. denied*, 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 104 (1977) (*Miranda* warnings need not be given before asking a suspect during routine booking if he uses any aliases). "Despite the breadth of the language used in *Miranda*, the Supreme Court was concerned with protecting the suspect against interrogation of an investigative nature rather than the obtaining of basic identifying data required for booking and arraignment." *United States ex rel. Hines v. LaVallee*, 521 F.2d 1109, 1112–13 (2d Cir. 1975), *cert. denied sub nom. Hines v. Bombard*, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976). We agree with the district court that Regilio's initials and signature were admissible.

### C

Regilio further claims that the district court erred in giving an instruction defining

"reasonable doubt" and in refusing to give his tendered instruction concerning reliability of co-conspirator statements.

■■■■ As we have noted many times, the better practice is not to define "reasonable doubt", but it is not reversible error to do so. *See, e.g., United States v. Allen,* 596 F.2d 227, 230 (7th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 97 (1979); *United States v. Lawson,* 507 F.2d 433, 442 (7th Cir. 1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). *See also* 2.07 Federal Criminal Jury Instructions of the Seventh Circuit which recommends that no instruction defining "reasonable doubt" be given. In this case, the challenged instruction merely stated that "[a] 'reasonable doubt' is what the term implies—a doubt that is based on reason." Frankly, we do not see how this instruction could have aided the jury in determining what "reasonable doubt" means. The definition merely restates the term. On the other hand, we do not see how this instruction could have harmed the defendant either. We repeat our prior admonition that the district court should not give any instruction defining "reasonable doubt", and we advise the district courts that we. will not hesitate to find reversible error in future cases in which a "reasonable doubt" definition is given which is misleading or confusing.

■■■■ The district court refused to give the following instruction tendered by Regilio:

> You have heard testimony regarding a statement allegedly made by Guillermo Saint-Blanchard [sic] that he was involved in the commission of the alleged crime with which the defendant is also charged. If you find that the statement was made, you may give the statement such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care, particularly since the statement in question was not under oath or subject to cross-examination.

In support of his contention, Regilio cites *United States v. Wasko,* 473 F.2d 1282 (7th Cir. 1973), in which we held that in appropriate cases the district court should give an instruction regarding the weight to be accorded accomplice testimony. An accomplice instruction is to be given only (1) if the accomplice testifies for the government and (2) if his testimony does not exculpate the defendant. 3.22 Federal Criminal Jury Instructions of the Seventh Circuit. This instruction is required because it is believed that inculpatory accomplice testimony is inherently unreliable. Out-of-court co-conspirator declarations, however, are not inherently unreliable because when the statement is made the declarant, unlike a testifying accomplice, has no reason to inculpate his co-conspirator falsely. *United States v. Papia,* 560 F.2d 827, 836 n.3 (7th Cir. 1977). The district court did not err in refusing to give Regilio's tendered instruction.

### D

■■■■ Finally, Regilio claims that the evidence is insufficient to support the jury's verdict because the Government proved only that Regilio was present during an illegal narcotics transaction; it did not prove that he actually participated in the venture. We have discussed the evidence introduced at trial at length in the preceding sections of this opinion and we believe that no purpose would be served by repeating that discussion here. Viewing the evidence in the light most favorable to the Government, as we must, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find that the Government proved more than "mere presence". The verdict was supported by substantial evidence.

### III

For the reasons discussed in this opinion, we

Affirm.