UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony Robert MARTIN–TRIGONA, Defendant-Appellant.

No. 80–2428.

United States Court of Appeals, Seventh Circuit.

Argued June 9, 1982.

Decided July 16, 1982.

Rehearing Denied Oct. 5, 1982.

ment contract. Purportedly, Martin-Trigona obtained a $42,800 mortgage on the property from the Citizens Building Association using the fraudulent chain of title and untruthfully warranting that the real estate was free of all encumbrances. Each count alleged that Martin-Trigona executed a mailing in perpetration of the fraudulent scheme. The government dismissed count VIII before trial, and the jury convicted Martin-Trigona, who defended *pro se*, of the remaining seven counts.

Martin-Trigona challenges his conviction on several grounds, but principally he contends that the judgment against him must be reversed because he was denied the effective assistance of counsel in violation of the sixth amendment by being required to defend *pro se* against his will. We agree, and, accordingly, we reverse the judgment of the district court and remand this case for a new trial.

George B. Collins, Collins & Amos, Chicago, Ill., for defendant-appellant.

Warren E. White, Danville, Ill., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and GRADY, District Judge.*

BAUER, Circuit Judge.

Defendant-appellant Anthony Robert Martin-Trigona was indicted on April 8, 1980, in the United States District Court for the Central District of Illinois. The indictment charged him with eight counts of mail fraud[1] in connection with his attempts to obtain a loan from the Citizens Building Association, Urbana, Illinois. The indictment alleged that Martin-Trigona established a fraudulent chain of title for property at 605 Indiana Street, Urbana, Illinois, which he was purchasing under an install-

I

Martin-Trigona was indicted on April 8, 1980, in the Central District of Illinois. On April 16, 1980, he filed a motion to continue arraignment and transfer the case to the Northern District of Illinois. The motion papers were signed by Paul Bradley, a Chicago attorney.[2] Bradley, however, had not filed an appearance on Martin-Trigona's behalf. The motion to continue arraignment was denied, and Martin-Trigona was arraigned in Danville, Illinois on April 17, 1980. He appeared *pro se*, but informed the magistrate that he intended to retain counsel and that Paul Bradley would be on "the counsel team." Tr. Apr. 17, 1980 at 5.

On May 19, 1980, Bradley filed a "Special and Limited Appearance" for the purpose of filing a motion to transfer the case against Martin-Trigona to the Northern District of Illinois.[3] The appearance indi-

---

* The Honorable John F. Grady, Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. 18 U.S.C. § 1341.

2. Paul Bradley signed the motion with the following notation under his name: "By [Martin-Trigona's] attorney Paul Bradley."

3. The appearance stated, in pertinent part:
   Attorney Paul Bradley enters his special and limited appearance in the above cap-

cated that "[i]n the event the motion to transfer is denied, counsel's appearance will and should be deemed to be withdrawn in accordance with the special and limited terms of the appearance stated herein."

Bradley argued the motion to transfer before the Honorable Robert D. Morgan on May 21, 1980. He stated that he would be unable to represent Martin-Trigona unless the case were transferred because he had other matters pending in the Northern District, making it impossible for him to go to trial in the Central District. Moreover, even if he were free to relocate to the Central District, Martin-Trigona was financially unable to pay a retainer sufficient to cover the expenses that Bradley would incur if he were to establish a temporary residence and office in the Central District.

Judge Morgan denied the motion to transfer and refused to permit Bradley to withdraw his appearance. Judge Morgan ruled that Bradley was Martin-Trigona's defense counsel until someone else appeared for him. Tr. May 21, 1980 at 32–33. Judge Morgan refused to appoint Bradley to represent Martin-Trigona even though Martin-Trigona informed the court that Bradley had not been retained. *Id.* at 34.[4]

Martin-Trigona filed a *pro se* appearance on May 27, 1980. He averred that he had been unable to retain counsel in the Central District and that he was "being forced involuntarily to represent himself because of the refusal . . . to transfer [the] case to the Northern District of Illinois for trial." He

informed the court that his inability to obtain counsel was making it difficult for him to prepare a defense because he lacked knowledge of and experience with federal criminal law or procedure.

On July 14, 1980, Martin-Trigona moved for a continuance of trial. He averred that although he was not indigent, he was unable to retain counsel because his assets were encumbered. He moved for a 180 day continuance to provide him with sufficient time in which to liquidate his assets to enable him to retain counsel.

The district court, the Honorable Cale J. Holder presiding,[5] conducted a pretrial hearing on July 14, 1980. Martin-Trigona, appearing *pro se*, informed the court that he desired to be represented by counsel, that he had advertised unsuccessfully for counsel in the Central District, and that he was attempting to liquidate assets in order to afford to retain counsel. Tr. July 14, 1980 at 56–58. He stated unequivocally that "[i]t is my preference, and has been since day one, and it will continue to be, to have the assistance of counsel." *Id.* He also requested the court to order the government to compensate any counsel he might retain from Criminal Justice Act funds. He, in turn, would reimburse the government after he liquidated some assets. *Id.* at 61–62 & 65. The court postponed ruling on Martin-Trigona's motions until July 21, 1980.

On July 21, 1980, Martin-Trigona filed a motion requesting the court to require the

tioned cause for the sole and limited purpose of representing the defendant in connection with a motion to transfer this case to the Northern District of Illinois.

      \*    \*    \*    \*    \*    \*

Counsel is unwilling and unable to represent the defendant if this cause is tried in the Central District of Illinois. The handling of this case would conflict with the remainder of counsel's case load and clients. Counsel is willing to represent the defendant in the Northern District, and enters this special and limited appearance for the sole and limited purpose of asking the court to transfer this cause to the Northern District for all further proceedings.

In the event the motion to transfer is denied, counsel's appearance will and should be

deemed to be withdrawn in accordance with the special and limited terms of the appearance stated herein.

4. Judge Morgan entered an order May 22, 1980, ruling that Bradley's appearance was not considered special and limited "in view of all the circumstances of his general representation of the defendant, including general appearance in this case by motion filed April 16, 1980."

5. On June 2, 1980, Judge Morgan recused himself from this case. On June 9, 1980, then Chief Judge Fairchild designated the Honorable Cale J. Holder, United States District Court Judge for the Southern District of Indiana, to preside over Martin-Trigona's trial.

government to advance him funds for the prepayment of legal fees. He stated that he was not seeking "appointed counsel within the terms of 18 U.S.C. § 3006A because [he was] not indigent." The motion papers indicated that the relief sought was needed only if the case was not transferred to the Northern District because Paul Bradley was willing to represent Martin-Trigona on credit if the case were transferred.

Martin-Trigona appeared *pro se* at the July 21, 1980, hearing before Magistrate Larry Lessen. In the motions pending before the court, Martin-Trigona sought either of three types of relief: (1) transfer of the case to the Northern District; (2) government prepayment of a $20,000 retainer to be reimbursed by Martin-Trigona; or (3) continuance of the trial for 180 days to permit him to liquidate assets to be used to retain counsel. He informed the court that he did not have counsel, but that he wanted to be represented by a lawyer and was attempting to retain counsel. Tr. July 21, 1980 at 6 & 107. Magistrate Lessen recommended that the trial court deny Martin-Trigona's motions, and trial was scheduled to commence on August 4, 1980.

On July 22, 1980, Martin-Trigona was found in contempt of court in an unrelated civil case pending in the Northern District and ordered committed to jail as a recalcitrant witness. *See Martin-Trigona v. Gouletas*, 634 F.2d 354 (7th Cir.), *cert. denied*, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980), in which we affirmed the contempt order. On July 29, 1980, the order of confinement was modified to permit Martin-Trigona's immediate release between 6:00 a.m. and 9:00 p.m. to prepare for the mail fraud trial. He was ordered completely released from August 3 until the end of the trial.

On August 4, 1980, Martin-Trigona filed a renewed motion for continuance, and James Voyles, an Indianapolis attorney, filed a limited appearance for the purpose of moving for continuance. Judge Holder conducted a hearing on this motion before impaneling a jury. Voyles informed the court that Martin-Trigona had contacted him the day before and asked him to represent him. Voyles stated that he was willing to represent Martin-Trigona, but could do so only if the court would grant a reasonable continuance so he could prepare for trial. Tr. at 52–53, 59 & 186–91. Martin-Trigona informed the court that he had been incarcerated in the Metropolitan Correctional Center, Chicago, since July 22, 1980, on the contempt charge and had been unable to prepare for trial or contact Voyles sooner.

Judge Holder denied the motion for continuance and permitted Voyles to withdraw his appearance. *Id.* at 231. He stated that Bradley was still the counsel of record. *Id.* at 219. He noted that "[t]here's been no indication of the defendant being an indigent person, and he's able to hire a lawyer." *Id.* at 243. Judge Holder, however, conducted no inquiry into Martin-Trigona's financial ability to obtain counsel.

The jury was impaneled, and trial commenced on August 4, 1980, and continued for three weeks. Martin-Trigona represented himself throughout the proceedings. The jury convicted him on all seven counts.

## II

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." If the defendant is financially unable to retain private counsel, the trial court must appoint counsel to represent him. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Criminal Justice Act of 1964, 18 U.S.C. § 3006A, describes those situations in which a federal court must appoint counsel to represent a defendant. The court must advise the *pro se* felony defendant of his right to be represented by counsel and inform him that counsel will be appointed to represent him if he is "financially unable to obtain counsel." *Id.* at § 3006A(b). If the defendant does not waive the right to be represented by appointed counsel, the court must appoint counsel to represent him unless the court "*is*

*satisfied after appropriate inquiry*" that the defendant is financially able to obtain counsel. *Id.* (Emphasis added.)

██ Martin-Trigona informed the court on numerous occasions before trial that he was not represented by counsel, that he desired to be represented by counsel, and that he was financially unable to obtain counsel because his assets were encumbered. When a criminal defendant notifies the court that he is unable to retain counsel, the court has a duty to make further inquiry into the defendant's financial condition to ascertain whether he is entitled to have counsel appointed to represent him. *United States v. Johnson*, 659 F.2d 415, 418 (4th Cir. 1981); *United States v. Anderson*, 567 F.2d 839, 840 (8th Cir. 1977), *later appeal*, 572 F.2d 1286 (8th Cir. 1978); *United States v. Cohen*, 419 F.2d 1124, 1127 (8th Cir. 1969). The district court made no such inquiry in this case. Instead, it assumed that Martin-Trigona was not entitled to have appointed counsel because he was not indigent. One need not be indigent, however, to qualify for appointed counsel; one need only be "financially unable to obtain counsel." *United States v. Kelly*, 467 F.2d 262, 266 (7th Cir. 1972), *cert. denied*, 411 U.S. 933, 93 S.Ct. 1905, 36 L.Ed.2d 393 *reh. denied*, 412 U.S. 923, 93 S.Ct. 2738, 37 L.Ed.2d 151 (1973).

██ It appears from the record before us that Martin-Trigona was financially unable to obtain counsel. If so, the trial court denied Martin-Trigona the effective assistance of counsel by insisting that he defend *pro se.* In any event, the trial court's failure to conduct an appropriate inquiry into Martin-Trigona's financial ability to retain counsel was reversible error.[6]

██ The district court may have failed to inquire into Martin-Trigona's apparent fi-

nancial inability to retain counsel because it insisted that Martin-Trigona was represented by Paul Bradley. Tr. at 219. A trial court may not deny a defendant the right to the effective assistance of counsel merely because an attorney has earlier filed a limited appearance on the defendant's behalf. *United States v. Seale*, 461 F.2d 345, 358 (7th Cir. 1972).

In *Seale*, several attorneys filed appearances on defendant Seale's behalf. Seale, however, insisted that only Charles R. Garry had been retained to represent him. Mr. Garry was to be hospitalized when trial was scheduled to commence, and Seale moved for continuance until Mr. Garry was available. The district court denied Seale's motion on the ground that other counsel who had filed appearances for Seale were available for trial. We reversed, holding that the district court abused its discretion in denying Seale's motion without conducting an inquiry to determine whether the other attorneys actually represented Seale. 461 F.2d at 358. We held that the trial court is not justified in using an appearance "to determine summarily the attorney-client relationship at least where, as here, there was protestation that the appearance did not in fact reflect the true consensual relationship between the defendant and the attorneys of record for him." *Id.*

██ In this case, Bradley and Martin-Trigona informed the court that Bradley's appearance was limited to representing Martin-Trigona on his first two motions to transfer the case. After May 27, 1980, all of Martin-Trigona's motions were filed *pro se,* and he appeared at all pretrial hearings without the benefit of counsel. Under these circumstances, the trial court was not justified in relying on Bradley's limited ap-

---

**6.** We appreciate that the district court did not have an easy, or pleasant, task in this case. The stories about Martin-Trigona's clashes with the appellate and district court judges in this circuit are legion. Judge Holder of the Southern District of Indiana was assigned to preside over this trial only after all the judges in the Central District of Illinois recused them-

selves because of prior run-ins with the defendant. Nevertheless, although Martin-Trigona might not win a personality contest in this circuit, he still retains the same constitutional rights as every other defendant brought before this bar. And in spite of himself, we intend to see that he receives a fair trial.

pearance in concluding that Martin-Trigona was represented by retained counsel.[7]

Relying on *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the government contends that Martin-Trigona was not denied the effective assistance of counsel because he waived his right to counsel and chose to represent himself.[8] We disagree.

■ A criminal defendant may waive the right to counsel and elect to represent himself, but the waiver is invalid unless the defendant has been informed of his right to counsel and then intelligently and voluntarily chooses to appear *pro se*. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *United States v. Davis*, 604 F.2d 474, 482 (7th Cir. 1979). Waiver of the right to counsel may not be presumed from a silent record. *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).

■ The trial court never informed Martin-Trigona that he might be entitled to be represented by court-appointed counsel. Moreover, Martin-Trigona indicated repeatedly that he wished to be represented by counsel and was attempting to retain counsel. Under these circumstances, Martin-Trigona did not waive the right to appointed counsel or voluntarily elect to represent himself.

■ The district court had a duty to conduct an inquiry to determine whether

---

7. The district court recognized that an attorney may make a limited appearance because it permitted Voyles to enter one. Frankly, we do not understand why the district court permitted the limited appearance in the one instance, but not in the other.

8. The government quotes extensively from the transcript of the July 14, 1980 hearing in support of its argument that Martin-Trigona voluntarily and knowingly elected to defend *pro se*. The government, however, has quoted Martin-Trigona out of context. For example, Martin-Trigona made the following remarks:

> I need not burden the record with a recitation of Supreme court cases, whose parties escape me, involving the constitutional right of party to defend himself *pro se*. It was a '75 case, such and such versus California, I think, but it's there. We all know it's there; we all know there's no lawyer here.
>
> \* \* \* \* \* \*
>
> [T]here is only one counsel in this case at this point and that is the defendant *pro se*, .... [S]o this seems to suggest that the defendant has a constitutional right to enter an appearance *pro se* and to represent himself *pro se* ....
>
> \* \* \* \* \* \*
>
> My appearance is on file. What more do you have to do when you are a defendant, to give the Court and the government notice that you are exercising your constitutional right to proceed *pro se*....
>
> \* \* \* \* \* \*
>
> I'm just disgusted that my rights as a defendant to represent myself *pro se* are being trifled with by Mr. White, who is ignoring me and who is ignoring my appearance....
>
> \* \* \* \* \* \*

> [T]here was no doubt in anybody's mind when I filed my appearance on May 27 that I was proceeding *pro se*....
>
> \* \* \* \* \* \*
>
> I filed my appearance *pro se* formally on May 17, [sic] and it was at that time that there was no doubt in anyone's mind that I was exercising my constitutional right to appear *pro se*.
>
> \* \* \* \* \* \*
>
> [O]nce I entered the *pro se* appearance, that was notice to the world, to the Court, and even to Mr. White, that then I was in the case *pro se* pursuant to my constitutional right....
>
> \* \* \* \* \* \*
>
> [B]ut this isn't the way a defendant is supposed to be treated when he enters a *pro se* appearance, and you don't have to go any further than the tip of the Supreme Court's decision. I exercise the constitutional right and they taxed my constitutional right by seeking to trifle with it, and that upsets me, because I have the right to have rights.

July 14, 1980 tr. at 19, 21, 24, 32, 37, 40 & 51–52. He made these statements in connection with his complaint to the court that the government was refusing to serve discovery documents and motion papers on him. Instead, it persisted in mailing all pretrial documents to Paul Bradley, who was not representing Martin-Trigona. Martin-Trigona stated unequivocally at the July 14, 1980 hearing that he wished to be represented by counsel. He said, "It is my preference, and has been since day one, and it will continue to be, to have the assistance of counsel." Tr. at 56–58. He recognized, however, that since he did not have counsel, it was essential that he be served with all documents.

**492**

Martin-Trigona was financially able to retain counsel. We instruct the district court on remand to conduct such an inquiry. If the court finds that Martin-Trigona is financially unable to obtain counsel, the court should appoint counsel to represent him.[9]

### III

█ Martin-Trigona contends that several other reversible errors occurred at trial. We have considered all of Martin-Trigona's claims of error and find only three to have merit. The district court erred (1) in refusing to permit Martin-Trigona to introduce evidence in support of his good faith defense; (2) in refusing to give Martin-Trigona's tendered theory of the defense instruction; and (3) in giving an instruction defining "reasonable doubt."[10]

### Good Faith Defense

It is difficult to discern from Martin-Trigona's *pro se* representations to the trial court precisely what good faith evidence he sought to introduce. On appeal, Martin-Trigona's counsel contended that Martin-Trigona sought to prove his lack of an intent to defraud. He attempted to prove his good faith by showing his belief that his representations of ownership of the proper-

ty were truthful because he though he had equitable title.

█ Mail fraud is a specific intent crime. The government is required to prove beyond a reasonable doubt that the defendant intended to defraud. *United States v. Weidman*, 572 F.2d 1199, 1202 (7th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *United States v. Marine*, 413 F.2d 214, 216 (7th Cir. 1969), *cert. denied*, 396 U.S. 1001, 90 S.Ct. 550, 24 L.Ed.2d 493 (1970). Thus, good faith, or the absence of an intent to defraud, is a complete defense to a charge of mail fraud. *United States v. Hutul*, 416 F.2d 607, 624 (7th Cir. 1969), *cert. denied sub nom. Sacks v. United States*, 396 U.S. 1007, 90 S.Ct. 562, 24 L.Ed.2d 499, *reh. denied*, 397 U.S. 1081, 90 S.Ct. 1519, 25 L.Ed.2d 820 (1970). The defendant is entitled to present evidence concerning his beliefs, motives, and intentions regarding the various transactions and mailings in the alleged scheme to defraud. *Id.* To the extent that Martin-Trigona sought to introduce evidence consistent with such a good faith defense, the trial court erred in excluding it.

### Theory of the Defense Instruction

Although Martin-Trigona's theory of the defense instruction was not preserved in the

---

9. If the court appoints counsel for Martin-Trigona and he later liquidates his assets and becomes financially able to retain counsel, the court may then require him to reimburse the Criminal Justice Fund. 18 U.S.C. § 3006A(c); *United States v. Allen*, 596 F.2d 227 (7th Cir. 1979); *United States v. Durka*, 490 F.2d 478 (7th Cir. 1973).

10. Martin-Trigona also contends that the trial court violated rule 30 of the Federal Rules of Criminal Procedure by failing to hold an instructions conference and by failing to inform him before closing arguments which instructions the trial court intended to give. Rule 30 provides:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury

after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

Failure to comply with rule 30 is reversible error only if the defendant was prejudiced. *Hamling v. United States*, 418 U.S. 87, 135, 94 S.Ct. 2887, 2916, 41 L.Ed.2d 590, *reh. denied*, 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974); *United States v. Ledesma*, 632 F.2d 670, 678 (7th Cir.), *cert. denied*, 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980). We agree with Martin-Trigona that the trial court should have permitted the parties to review the instructions, object to them, and be apprised of the court's rulings on the objections before closing arguments were made. We assume on remand that rule 30 will be followed.

record, the government concedes that the instruction was properly tendered. It argues, however, that the instruction was not supported by the law or the evidence, and, thus, the district court properly refused to give it.

■ A defendant is entitled to have the jury instructed on his theory of the defense if the defense is supported by the law and the evidence. *United States v. Grimes*, 413 F.2d 1376, 1378 (7th Cir. 1969). Martin-Trigona defended on the theory that he lacked the requisite specific intent to defraud. He attempted to introduce evidence supporting this defense, but much of it was not admitted because he failed to lay proper foundations.

■ Because mail fraud is a specific intent crime, *United States v. Bryza*, 522 F.2d 414, 421 (7th Cir. 1975), *cert. denied*, 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976), Martin-Trigona's defense that he lacked the intent to defraud is supported by law. Moreover, there was some evidence in the record supporting the defense. The admitted documents established that Martin-

Trigona informed the bank that he and the sellers of the property were embroiled in litigation over the sale. In addition, the copy of title that Martin-Trigona filed stated boldly on its face that it was a copy. Thus, there was a sufficient legal and factual basis for the instruction. The trial court, therefore, erred in failing to give the jury a theory of the defense instruction.

*Reasonable Doubt Instruction*

■ The district court gave a lengthy, complicated reasonable doubt instruction.[11] We have repeatedly admonished district courts not to define "reasonable doubt." *See, e.g., United States v. Allen*, 596 F.2d 227, 230 (7th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 97 (1979); *United States v. Lawson*, 507 F.2d 433, 442 (7th Cir. 1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). We advise against defining "reasonable doubt" because often the definition engenders more confusion than does the term itself. *See* Comment to Instruction 2.07, Federal Criminal Jury Instructions of the Seventh

---

11. The court gave the following reasonable doubt instruction:

A reasonable doubt means a doubt that is based on reason rather than speculation. It must be sufficient to cause a reasonable prudent person to hesitate to act in the more important affairs of his life.

A reasonable doubt arises only when the evidence is not sufficient to satisfy the minds of the jury to a moral or reasonable certainty of a Defendant's guilt. It may arise from the evidence or from the lack of evidence in the case. The purpose of the rule of reasonable doubt is to protect all citizens against conviction of crime upon insufficient evidence. The rule of reasonable doubt does not allow you to apply it to the evidence item by item, and to fragmentary parts of the evidence, as though each fact or circumstance stood apart from the other facts and circumstances, but you will apply the rule to the whole and entire appropriate evidence applicable to a Defendant as I have directed you to do in these instructions and during the trial. The rule does not require that each identical or subsidiary fact be proved beyond a reasonable doubt. It is not sufficient that a mere probability or possibility of guilt exist by the evidence.

So the test you will apply to the evidence in this case is whether, after a full, fair and candid consideration of it, the jury is, or is not satisfied to a moral certainty that the Defendant has violated the law as charged and that you have no honest uncertainty about it. If the evidence, without which guilt cannot be established, may fairly be reconciled with innocence, then a reasonable doubt is said to exist. With your verdict your duties in the case end, and no one hereafter has a right to question you respecting it.

If, from a full, fair and candid consideration of all of the evidence applicable to the Defendant, your minds are led to the conclusion that the Government has failed to establish one or more of the material and essential necessary elements and facts of a charged crime in the Indictment required to establish guilt beyond a reasonable doubt, you are to return a verdict of not guilty accordingly as to such charged crime. If, on the other hand, after a conscientious consideration of all of the evidence applicable to the Defendant, that is circumstances in the evidence, and the natural and reasonable inferences to be drawn therefrom, your minds are brought to a conclusion beyond a reasonable doubt, that is, to a moral certainty, that such Defendant is guilty of a crime as charged in the Indictment, then you are to return a verdict of guilty accordingly as to such charged crime.

**494**

Circuit (approved in principle). We trust that no instruction defining "reasonable doubt" will be given on remand.[12]

## V

The judgment of the district court against Martin-Trigona is reversed and this cause is remanded for proceedings consistent with this opinion. Circuit Rule 18 will apply.

REVERSED AND REMANDED.

12. Giving an instruction defining "reasonable doubt" is reversible error only if the instruction is misleading or confusing. *United States v. Regilio*, 669 F.2d 1169, 1178 (7th Cir. 1982). In *Regilio*, we held that the instruction, "[a] 'reasonable doubt' is what the term implies—a doubt that is based on reason," merely restated the term and was, therefore, not error.