**UNITED STATES, Appellee,**

v.

**James Crawford McAFEE, Lloyd Cowan Parker, William Bull Pringle, III, Defendants, Appellants.**

**No. 85–1355.**

United States Court of Appeals, First Circuit.

Argued Oct. 7, 1985.

Decided Dec. 20, 1985.

Rehearings Denied Feb. 27, 1986.

144

Robert F. Muse with whom Ronald Kovner, Washington, D.C., was on brief for appellant Pringle.

Robert W. Ritchie, Amherst, Mass., for appellant Parker.

Herbert S. Moncier, Knoxville, Tenn., for appellant McAfee.

Gary S. Katzmann, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., and Robert W. Meserve, Sp. Asst. to the U.S. Atty., Boston, Mass., were on brief for appellee.

Before COFFIN, Circuit Judge, TIMBERS,* Senior Circuit Judge, BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

We consider here an appeal of a decision of the district court arising out of our remand in *United States v. Pringle*, 751 F.2d 419 (1st Cir.1984), in which we asked the district court to determine whether a four and one-half-month period of delay in criminal pretrial proceedings was excludable delay under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(F) (1982). The district court, 607 F.Supp. 105 (D.Mass.1985), found the delay excludable and defendants have appealed.

For a complete and detailed description of all of the pretrial proceedings, we refer to our previous opinion, *Pringle*, 751 F.2d

* Of the Second Circuit, sitting by designation.

at 430–31. Focusing only on the period of delay at issue here, January 10, 1983, to May 23, 1983, we summarize the essential facts. The delay was preceeded by a continuance which postponed the date set for a hearing on dispositive motions and/or trial from November 29, 1982, to January 10, 1983. In the application for the continuance, defense counsel stated that "all defendants in the above-captioned matter waive their rights to a speedy trial." Because the continuance coincided with the implementation of a plan of the District of Massachusetts to expedite the trials of both criminal and civil cases by reassignment of the cases, the district court made the rescheduling of the hearing/trial date for January 10, 1983, subject to the confirmation of the judge to whom the case would be reassigned. The January 10, 1983 hearing/trial date never materialized, however. No further action occurred in the case, other than the government's filing on March 11, 1983, of a memorandum in opposition to the defendant's motion to dismiss and suppress, until the new judge to whom the case had been assigned on December 15, 1982, held a status conference on May 23, 1983.

At the time of the remand, we speculated that two different scenarios might explain this long delay. One was that both the court and government relied upon the waiver by the defendants of their speedy trial rights and did not apply the requirements of the Act to this case. In our previous opinion, we held that while a waiver of this kind could not be permitted to suspend the operation of the Speedy Trial Act, we would not let waiver-induced delay count toward the seventy nonexcludable days required for dismissal of an indictment, 18 U.S.C. §§ 3161(c)(1), 3162(a)(2), because this was the first time this rule was announced. We reasoned that we should not allow defendants to lull "the court and the prosecution into a false sense of security only to turn around later and used the waiver-induced leisurely pace of the case as grounds for dismissal." *Pringle*, 751 F.2d at 434.

Thus, we directed on remand that if the delay was caused by the waiver, it should be treated as excludable.

There was, however, a second explanation for the delay, which would not result in its exclusion. A major discovery issue in the case at that time was whether the government would release classified information pertaining to how the defendants' yacht had been spotted and put under surveillance. While the government did not actually move for a protective order for the classified information requested by defendants until June of 1983, it had indicated to defendants that it would proceed under the Classified Information Procedures Act as early as January, 1983. Since the motions for suppression and dismissal may have rested upon this classified information, it appeared that the government's long delay in addressing this crucial issue might have been the cause of the delay. We stated in our previous opinion that if the government's procrastination was at the root of this delay, the court also would bear some responsibility for failing to move the case along. Thus, we concluded that "[i]f the delay between January 10, 1983, and May 23, 1983, was due to the government and the court, not the defendants' waiver, then the time is nonexcludable and the indictment must be dismissed." *Pringle*, 751 F.2d at 435.

Upon remand, the district court below held an evidentiary hearing to determine whether the defendants' waiver "caused or contributed to the delay." *Pringle*, 751 F.2d at 434. The district court found that the government attorney had in fact relied upon the defendants' waiver and had accordingly slowed down the pace of the case. The effect of the waiver was further strengthened by numerous conversations between the government and defense counsel in which defense counsel indicated their satisfaction with the slow pace of the case because they were all extremely busy and because they recognized that the case was a "loser" and that their clients faced "maximum exposure." The district court found that the "defendants' waiver was the substantial, predominant, and proximate cause

of the leisurely pace at which the case proceeded."

During the remand hearing, however, a third explanation for the period of delay surfaced. A transcript of the May 23, 1983, status conference which had not previously been available either to this court or the parties showed that the district court itself was unaware that the case had been reassigned to it until shortly before the status conference:

THE COURT: Where has this case been since the 15th of December when I discovered to my horror this was allegedly withdrawn. I never saw or heard of this case until last Wednesday or Thursday.

MR. ELDRIDGE: Is that right, sir?

THE COURT: You better believe it. My regular courtroom deputy is in Paris at the moment so I can't interview her as to what, if anything, she knows or doesn't know. I never saw the names of any of these defendants. We get a computerized printout every week or couple times a week.

MR. MONCIER: Judge Garrity had the case.

THE COURT: Up until December 15th.

MR. MONCIER: Then it went into what we understand was a pool and we were just informed that your Honor had been assigned the case out of the pool.

THE COURT: Well, what they did is all the cases that the panel headed by Judge Garrity didn't dispose of were redrawn on one individual member of the Court and the computerized docket, which is this thick, recites it was drawn to me December 15th, but never got on any of my individual lists.

It thus appears that even though the government may have been relying upon the waiver to justify its slow movement on the case, the court itself was, due to a clerical or computer error, entirely unaware of the fact that the case was on its docket and, therefore, could not have known of the waiver.

In holding that the delay in question was predominantly caused by the waiver,

the district court focused upon the government's role of helping the court to stay within the limits of the Speedy Trial Act and reasoned that, "but for" the waiver, the government would have reminded the court of the Speedy Trial Act problems which were being created by the long delay. The difficulty we have with this analysis is that it fails to recognize that the court has its own independent responsibility to enforce the Act.

While the government's interest in avoiding the dismissal of indictments may motivate it to remind the court of possible Speedy Trial Act violations lurking ahead, the primary responsibility for meeting the Act's requirements rests on the court. The elimination of delays caused by court congestion and administrative red tape was a major, if not *the* major, concern of Congress in passing the Act. S.Rep. No. 1021, 93d Cong., 2d Sess. 22, *reprinted in* A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, at 160 (Fed.Judicial Center 1980). It is the court which must set the dates for hearings and trial and decide pretrial motions within the time limits specified by the Act. "Not only must the court police the behavior of the prosecutor and the defense counsel, it must also police itself." *Pringle,* 751 F.2d at 429. A breakdown in the administrative processing of a case cannot be excused because of a waiver-induced failure of the government to monitor the progress of the case. It is the court's responsibility to see to it that the deadlines of the Act are met. The primary cause of the delay in this case was the administrative mixup which prevented the court from exercising proper control of the case, indeed from even knowing that the case was on its docket. We are sensitive to the fact that in this case the judge personally was fully aware of his responsibilities and acted promptly when he discovered the error. Our difficulty, however, with attributing significance to possible error or inaction by the prosecutor or a court clerk is that such an analysis fails to recognize that the court has its own independent and undelegable responsibility to enforce the Act.

A delay of this kind is not excludable time under the Act. *United States v. Ferris,* 751 F.2d 436 (1st Cir.1984). When this four and one-half-month delay is added to the sixty-two days of nonexcludable delay which occurred during other parts of the pretrial period, the total far exceeds the seventy days of pretrial delay allowed under the Act. Dismissal of the indictment is, therefore, mandated. 18 U.S.C. § 3162(a)(2).[1] The facts and circumstances of this case lead us to conclude that the dismissal should be without prejudice. Defense counsel are not blameless here. Although the waiver was not the primary cause of delay, the government might have alerted the judge to the progress of the case had it not relied on the waiver. We do not think defendants should benefit from the misrepresentations of their counsel by a dismissal with prejudice.

*Reversed.* Dismissed without prejudice.

---

1. 18 U.S.C. § 3162(a)(2) provides in pertinent part:

    (2) If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant.... In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.