UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesus Ismael MIRANDA, J.M. Seafood,
Inc., Defendants-Appellants.

No. 86–5266.

United States Court of Appeals,
Eleventh Circuit.

Jan. 15, 1988.

Howard Sohn, Miami, Fla., for defendants-appellants.

Leon B. Kellner, U.S. Atty., Judy K. Hunt, David O. Leiwant, Sonia Escobio O'Donnell, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

JOHNSON, Circuit Judge:

This is a not so long opinion about "shorts." Jesus Ismael Miranda with his company, J.M. Seafood, Inc., and Mario Gonzalez with his company, Mario Seafood Company, were convicted of conspiring in Florida to sell undersized spiny lobster tails, also known as "shorts."[1] We are asked to consider four issues.

I. *Sufficiency of the Evidence*

█ Appellants Miranda and J.M. Seafood contest the sufficiency of the evidence for the conspiracy conviction. The evidence, however, that Miranda conspired with J.M. Seafood and that both appellants conspired with co-defendant Gonzalez is in fact overwhelming. Satisfaction of four criteria is necessary: 1) existence of a conspiracy, 2) appellants' knowledge of the conspiracy, 3) appellants' voluntary participation in the conspiracy, and 4) evidence of an overt act by one of the conspirators. *United States v. Lignarolo*, 770 F.2d 971, 987 n. 9 (11th Cir.1985).

Miranda and Gonzalez were closely associated in business and in family.[2] Specifically, the following links between appellants and Gonzalez were shown at trial: the undercover special agent was directed to Gonzalez for sales when Miranda was not available; Gonzalez was present during a conversation between Miranda and the special agent about the sale of the shorts, and immediately thereafter Miranda and Gonzalez conferred; Miranda used Mario Seafood Company for storage of the special agent's order of undersized lobster tails; Gonzalez assisted in loading the boxes of shorts onto the special agent's truck; additional shorts were being stored and processed at Mario Seafood; and confiscated records indicated sales of shorts from Mario Seafood to J.M. Seafood.

On review, there is sufficient evidence to support the jury's finding that appellants Miranda and J.M. Seafood were guilty beyond a reasonable doubt of conspiring to sell undersized spiny lobster tails. *United States v. Bell*, 678 F.2d 547 (5th Cir. Unit B 1982) (en banc).

II. *Jury Instructions for the Defense Theory*

Appellants Miranda and J.M. Seafood also contest the district court's refusal to instruct the jury on a defense theory based on the statutory exception that the Lacey Act "shall not apply to the interstate shipment or transshipment through ... a State of any fish or wildlife or plant legally taken if the shipment is en route to a State in which the fish or wildlife or plant may be legally possessed." 16 U.S.C.A. § 3377(c). The instruction requested by appellants stated in part:

Therefore, if you find that Defendants meet the exception to the law which I have read to you, inasmuch as the sales of the lobster tails made to the government were obtained legally and trans-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Sales in interstate commerce valued over $350 of any fish or wildlife taken, possessed, transported, or sold in violation of state law are prohibited by the Lacey Act. 16 U.S.C.A.

§§ 3372(a)(2)(A), 3373(d)(1)(B). Possession of spiny lobster tails under 5½ inches long is criminal in Florida under Fla.Stat. § 370.14 (West 1974 & Supp.1987).

2. Gonzalez was Miranda's stepfather.

shipped outside of the State of Florida to Louisiana, you must find the Defendants not guilty.

 Section 3377(c) clearly does not apply to the facts of this case, and the district court was correct to reject the instruction. The statutory exception speaks to cases where a shipment of wildlife or fish only passes through a state; it is irrelevant where wildlife or fish is knowingly possessed and sold in interstate commerce in violation of state law. In this case, Miranda and J.M. Seafood were implicated in illegal possession and sales in Florida, regardless of the source or destiny of the lobster tails. They bought, inventoried, and sold the undersized tails. *Accord United States v. Martinell*, 611 F.Supp. 399 (M.D.Pa.1985).

In that the requested instruction did not represent the law applicable to this case, the instruction had no place before the jury. *United States v. Sans*, 731 F.2d 1521, 1529–30 (11th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985); *United States v. Williams*, 728 F.2d 1402, 1404 (11th Cir.1984).

### III. *Introduction of Evidence Under Rule 404(b)*

 Under the exception allowed by Fed. R.Evid. 404(b),[3] the trial court admitted a citation from the Florida Marine Patrol, in which Miranda was charged with the possession of undersized lobster tails in violation of Fla.Stat. § 370.14. The citation was issued prior to the special agent's contact and transactions with appellants Miranda and J.M. Seafood. Thus the government offered the citation into evidence to prove Miranda's knowing violation of the Lacey Act. Miranda's attorney refused to concede knowledge on the part of Miranda, and, claiming that their activity fell within the Lacey Act exception, appellants repeatedly alleged their lack of knowledge. In response, the district court accepted the citation into evidence with instructions to the

jury that the evidentiary consideration of the citation be limited solely to the assessment of Miranda's knowledge of the Florida statute. Such knowledge is necessary to trigger a Lacey Act violation. The district court determined that the probative value of the evidence outweighed any prejudicial effect. *United States v. Chilcote*, 724 F.2d 1498 (11th Cir.1984); *United States v. Roberts*, 619 F.2d 379, 383 (5th Cir.1980). We find that the citation, accompanied by the court's limiting instructions, was properly admitted into evidence under Fed.R.Evid. 404(b) without a clear abuse of discretion. *United States v. Dothard*, 666 F.2d 498, 501 (11th Cir.1982).

### IV. *Speedy Trial Act Requirements*

 Appellants Miranda and J.M. Seafood were arrested and indicted March 13, 1985. The case progressed normally, with proceedings before a United States magistrate leading to a hearing before the district court judge on September 4, 1985. At that hearing, the court indicated a willingness to accept the magistrate's recommendation to deny a motion to dismiss based on the unconstitutionality of the Lacey Act and the underlying Florida statute. The court, however, made no final decision. Shortly thereafter, a different judge, involved in related pending cases, ordered the original magistrate to advise the Florida attorney general that the State could elect to participate in the case, as the constitutionality of a statute was at issue. Fla.Stat. § 86.041; U.S.Dist.Ct.S.D.Fla. Rule 9(B). The magistrate entered an order on September 13, 1985, granting the Florida attorney general twenty days to notify the court of its interest. The order concluded: "Should there be no response from the Attorney General, the Report entered August 13, 1985, shall stand as the Final Report of the Magistrate, pending further disposition by the District Judges."

Thereafter, the proceedings stalled. No activity was registered on the court docket;

---

**3.** Fed.R.Evid. 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plans, knowledge, identity, or absence of mistake or accident.

no response came from the attorney general's office; [4] twenty days passed and no court activity was resumed. The case essentially dropped out of sight until appellants filed a motion to dismiss on Speedy Trial Act [5] grounds on January 22, 1986. More than four months of nonexcludable time had passed.[6]

The parties vigorously dispute where to lay the blame for the unnecessary and unacceptable delay, and the record lacks clarity in the course of the events. After a hearing on the matter, the trial court denied the Speedy Trial Act motion on January 30, 1986, and the trial was set for and did begin on February 12, 1986. The court apparently rejected the Speedy Trial Act claim on the premise that, because appellants had filed the original August motion to dismiss, it was appellants' incumbent responsibility to notify the court that after twenty days the attorney general had not responded and therefore the case was ripe to continue. The transcript of the hearing evinces a trial judge angered by his perception that Miranda and J.M. Seafood were trying to "take advantage of their failure to notify" the court.

A number of aspects of these irregular proceedings are disconcerting for this Court. It appears that, in the confusion of numerous related cases under different judges, the order to notify the attorney general's office—which held the denial of the motion to dismiss in abeyance—was entered without the knowledge of the judge who heard the motion to dismiss. Furthermore, because the notice of appearance from the attorney general did not appear on the docket sheet, the district court judge had no notice of any response from the attorney general. Moreover, it is clear that the "self-effecting" order was unaffected by expiration of the twenty days and uneffected for purposes of continuing trial. Finally, although both sides had filed objections to the magistrate's recommendation to deny the August motion to dismiss, the burden of assuring a final response appears to have been lopsidedly placed on appellants' shoulders.

■ The local rule for the Southern District of Florida requires that

[c]ounsel for the Government and counsel for each defendant shall within twenty (20) days after arraignment and every twenty (20) days thereafter until trial or plea of guilt or nolo contendere, file with the Court a status report as to each defendant which shall include a concise statement of:

(1) All excludable time ... on which there is agreement....

(2) All excludable time ... on which there is conflict....

(3) Computation of gross time, excludable time, net time remaining, and the final date upon which the defendant can be tried in compliance with the Speedy Trial Plan of this Court.

U.S.Dist.Ct.S.D.Fla. Rule 25(B). Clearly, neither party in this case complied with this rule. The import of the mutual obligation to report is that the burden of smooth proceedings must rest with all parties involved, and that interested parties have a responsibility to work with the court in monitoring developments and averting speedy trial violations. We register our

---

**4.** It appears that the attorney general's office did file a notice to appear, but a record of this filing was not entered on the docket sheet, nor was any subsequent contact made.

**5.** 18 U.S.C.A. § 3161(c)(1) requires that if a defendant pleads not guilty, trial "shall commence within seventy days from the filing date (or making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." Section 3162(a)(2) states that if the period until trial minus any excludable time as defined by Section 3161(h) exceeds seventy

days, "the information or indictment shall be dismissed on motion of the defendant." Under Section 3161(h)(1)(J), the maximum excludable time allowed for taking any matter under advisement by the court is thirty days.

**6.** Categories of excludable time are precisely delimited in the Speedy Trial Act, § 3161(h). Even allotting thirty excludable days for the time that the magistrate's order was "under advisement by the court," § 3161(h)(1)(J), the period from early October to the January motion to dismiss was clearly outside of any statutory exception.

concern about any inference that the burden of notification lay on only the appellants in this case, or that the burden should ever rest exclusively with a party bringing a motion. Certainly, in this case, the government instigated the proceedings altogether by serving the indictment. The district attorney who initiated proceedings has a duty to follow through.

Although the local rule speaks of mutual obligation, the scope of responsibility for insuring speedy trials is prescribed by higher authority. Beyond our wariness about disproportionate responsibility borne by any single party, we are bound by constitutional precept and federal statutory intent. The Supreme Court has clearly said "[a] defendant has no duty to bring himself to trial." *Barker v. Wingo,* 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101 (1971). Despite commendable objectives of the local rule, we would contravene the proper allocation were we to graft the burden of notification on appellants in this case. Defendants are not required to insure speediness against themselves. *United States v. Bufalino,* 683 F.2d 639, 646 (2d Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983).

The specificity with which the Speedy Trial Act delimits excludable and nonexcludable time reflects Congressional intent that the Act be strictly followed. Where Congress provided for flexibility, Congress vested only limited discretion in the district court to grant continuances when "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(8)(A). Such continuances must be accompanied by contemporaneous findings explicating the ends of justice served. *See United States v. Tunnessen,* 763 F.2d 74, 76–78 (2d Cir.1985). Over four months of nonexcludable time in this case were not accommodated by any such continuance or findings.

The Speedy Trial Act has been violated and we must dismiss this case. The decision remains whether to dismiss with or without prejudice. Section 3162(a)(1) presents three factors to consider in making this decision: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." This Circuit does not perceive a statutory preference for either form of dismissal. *United States v. Russo,* 741 F.2d 1264 (11th Cir.1984).

The facts and circumstances resulting in the Speedy Trial Act violation in this case are somewhat murky, but it is at least clear that the parties who share the responsibility for expeditious trials also share the blame. By administrative confusion the court failed its responsibility. *United States v. McAfee,* 780 F.2d 143, 146 (1st Cir.1985). By failure of notification the government failed its responsibility. *United States v. Perez-Reveles,* 715 F.2d 1348, 1353 (9th Cir.1983). And although appellants are not as blameworthy as assumed by the district court, in the spirit of the local rule appellants are not blameless. *McAfee,* 780 F.2d at 146; *United States v. Carreon,* 626 F.2d 528 (7th Cir.1980) (serious crime but not serious delay, no prejudice from delay to defendant, and no intent of government to seek delay together justified dismissal without prejudice). *But see United States v. Williams,* 711 F.2d 748, 751 (6th Cir.1983) (no speedy trial violation absent evidence of intentional prosecutorial delay and actual prejudice to defendant); *United States v. Regilio,* 669 F.2d 1169, 1172–73 (7th Cir.1981) (complete silence from defendants who knew motions were pending contributed to finding that no Speedy Trial Act violation occurred). The unfortunate circumstances of this case point more to negligence and oversight than intentional delay.

For the decision of whether to dismiss with or without prejudice, we have in the past variously remanded to the district court, *United States v. DeLongchamps,* 679 F.2d 217 (11th Cir.1982), or retained the discretion to decide within this Court, *United States v. Russo,* 741 F.2d 1264 (11th Cir.1984). The record of this case points compellingly in one direction. We find the reasoning of the Second Circuit applicable:

Though that decision is normally for the district judge in the first instance, a remand for a hearing should not be routinely ordered in a case like this where the issue of whether dismissal should be with or without prejudice arises for the first time on appeal, the trial court having denied the motion to dismiss.... there is no need for a hearing in this case because we conclude that a decision to dismiss with prejudice would be an abuse of discretion.... We would not serve the purposes of the Speedy Trial Act by precipitating a needless hearing with the risk of a further appeal if by chance the district court should dismiss with prejudice.

*Tunnessen,* 763 F.2d at 79–80 (citation omitted). Accordingly and on the basis of applying the appropriate legal principles to the facts and proceedings of this case, we REVERSE the conviction below and we REMAND to the district court with instructions to dismiss the indictment without prejudice.

REVERSED. Dismissed without prejudice.