**William FLOWERS**

v.

**WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION, SOMERS.**

Civ. No. H–86–509 (PCD).

United States District Court,
D. Connecticut.

Jan. 22, 1988.

Gary Weinberger, Asst. Federal Public Defender, Hartford, Conn., for plaintiff.

Steven M. Sellers, Asst. State's Atty., Wallingford, Conn., for defendant.

RULING RE RECONSIDERATION OF RECOMMENDED RULING

DORSEY, District Judge.

In this action for a writ of habeas corpus, 28 U.S.C. § 2254, petitioner seeks to void his state court conviction claiming that, in violation of his sixth amendment right to a speedy trial, the State of Connecticut failed to bring him to trial until almost eighteen

months after he was arrested.[1] Magistrate Thomas Smith recommended ("Recommended Ruling") that the petition be denied.[2]

## I. *Facts*

On February 10, 1981, Lee Jones died in New Britain, Connecticut, "from a single .22 caliber bullet fired through his mouth and into his head." *State v. Flowers*, 198 Conn. 542, 554, 503 A.2d 1172 (1986). Petitioner was charged with Jones' murder and, on May 9, 1981, was arrested in Florida. He was returned to Connecticut on June 1, 1981. Petitioner was arraigned on June 2, 1981, and indicted on August 21, 1981. Petitioner's trial commenced on November 3, 1982—seventeen months and twenty-five days after he was arrested and seventeen months and three days after he arrived in Connecticut. He was found guilty on December 28, 1982, and sentenced to not less than twenty-five years in prison.

## II. *Discussion*

The right to a speedy trial is often viewed as simply one more "technicality" which gives greater respect to the rights of the accused than it does to victims. However, the roots of the rule are much deeper; its purpose much more fundamental.

The right to speedy justice dates back to the Assize of Clarendon (1166). *Klopfer*, 386 U.S. at 223–26, 87 S.Ct. at 993–95. As a viable part of the English common law, the right was transported to the American Colonies. "Today, each of the 50 States guarantees the right to a speedy trial to its citizens."[3] *Id.* at 223, 87 S.Ct. at 993.

As a cornerstone of the exaltation of individual liberty, the Constitution established the presumption that all men are innocent until found guilty. Thus, an accused is entitled to the same rights as are enjoyed by all citizens. "This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). A man's liberty is a most valued possession. That liberty is curtailed and clouded so long as an accusation of criminal conduct looms over his head. He should not long be kept in uncertainty as to whether that liberty will be lost or restored. *See generally Klopfer*, 386 U.S. at 222, 87 S.Ct. at 993; *Ewell*, 383 U.S. at 120, 86 S.Ct. at 776. The guarantee of a speedy trial, " 'one of the most basic rights preserved by our Constitution,' " *Smith v. Hooey*, 393 U.S. 374, 375, 89 S.Ct. 575, 575, 21 L.Ed.2d 607 (1969), quoting *Klopfer*, 386 U.S. at 226, 87 S.Ct. at 995, ensures that the curtailment of one's liberty and the anxiety of a public accusation are minimized.

The right to a speedy trial is the right of all citizens, not just the innocent. It attaches at the earlier of indictment or arrest. *United States v. Marion*, 404 U.S. 307, 313, 320, 92 S.Ct. 455, 459, 463, 30 L.Ed.2d 468 (1971). It is a right which is not lessened in retrospect by a finding of guilt.[4] Indeed, when petitioner exercised his right, he was presumed innocent. What occurred after that exercise is irrelevant to the analysis of whether his right was honored. Only in this manner can

---

**1.** Connecticut is obliged by the sixth and fourteenth amendments to honor an accused's right to a speedy trial. *Klopfer v. North Carolina*, 386 U.S. 213, 223–26, 87 S.Ct. 988, 993–95, 18 L.Ed. 2d 1 (1967).

**2.** Petitioner was found to have exhausted his state remedies, a finding neither party has challenged that finding. This aspect of the Recommended Ruling is adopted and approved.

**3.** *See* Connecticut Constitution of 1818, Art. 1, § 9.

**4.** Because petitioner's right to a speedy trial is being reviewed after a finding of guilt, the issue is often obscured by society's emotional reaction to the conviction. The Constitution requires the court to assess the right at the time it came into existence, when the defendant was first charged, when he was presumed to be innocent. The right to a speedy trial cannot be ignored because of a petitioner's conviction.

each member of society be assured of the equal protection provided by the right. The right protects the individual against undue and oppressive incarceration prior to trial.

The right to a speedy trial has several negative consequences to the community if it is violated. Where the accused is held in pretrial detention,[5] the threat that an accused may go free because of the length of his detainment gives him a bargaining chip in plea negotiations. *Barker v. Wingo,* 407 U.S. 514, 519 n. 7, 92 S.Ct. 2182, 2186, 33 L.Ed.2d 101 (1972), citing Report of the President's Commission on Crime in the District of Columbia at 256 (1966). Also, lengthy delay between arrest and punishment mitigates the efficacy of rehabilitation. *Id.* at 520 n. 10, 92 S.Ct. at 2187 n. 10, citing J. Bentham, *The Theory of Legislation* 326 (Ogden ed. 1931). And, an accused who cannot make bail contributes to the overcrowding of penal institutions. *Id.* at n. 11, 92 S.Ct. at n. 11, citing To Establish Justice, To Insure Domestic Tranquility, Final Report of the National Commission on the Causes and Prevention of Violence at 152 (1964). *See generally id.* at 519–21, 92 S.Ct. at 2186–87.

Perhaps the largest cost to society by the government's failure to honor one's right to a speedy trial is that, if the right has been violated, the defendant cannot be tried, or if tried, must be set free. *See Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). Any trial proposed to be conducted after the speedy trial time has elapsed must be stayed. If the trial is conducted after the speedy trial time has elapsed, the trial must be vacated as unlawful, an act of the state done outside its authority. *Strunk v. United States,* 412 U.S. 434, 439–40, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1973). In this regard, the right to a speedy trial "is unlike some of the other guarantees of the Sixth Amendment." *Id.* at 439, 93 S.Ct. at 2263.

The right constitutes a limit on the state. Neither monetary compensation nor sentence credit for time served in pretrial detention can replace a denial of this constitutional right. Society will likely pressure for reform of the system before it countenances further abuse.

The right to a speedy trial, however, is not without limitation. By using the word "speedy," the forefathers implicitly realized that the duration of time between a charge of misconduct and a trial necessarily involved a number of factors which made quantification of the right impossible. Indeed, it would be absurd to suggest that, at the moment of an arrest or charge, the state is immediately obligated to assemble a judge and jury to adjudicate the charge. While a state may adopt a specific rule for purposes of defining its own constitution, *see* Conn.Gen.Stat. § 54–82*l,* or Congress may statutorily create a specific limit, 18 U.S.C. § 3161, *et seq.,* or courts may impose a specific time frame pursuant to their own supervisory powers, *see Barker,* 407 U.S. at 530 n. 29, 523, n. 18, 92 S.Ct. at 2192 n. 29, 2188 n. 18, citing Second Circuit Rules Regarding Prompt Disposition of Criminal Cases (1971) (six months), the federal constitutional right to a speedy trial is not subject to precise definition. *Id.* at 529, 92 S.Ct. at 2191. Moreover, any discussion of the speedy trial right must recognize the right of the state to regulate the lives of its citizens for the preservation of law and order by defining, prohibiting, adjudicating and punishing criminal behavior.

To accommodate both the individual's right to a speedy trial and society's interest in prosecuting criminal misconduct, the Supreme Court has adopted a case-by-case approach requiring the analysis of four factors: "Length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." [6] *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192.

---

**5.** Flowers was incarcerated because of his inability to make bond in the amount of $250,000 as set by the trial court.

**6.** While noting only four factors, the Supreme Court noted that there might be other factors relevant to the decision. *Barker,* 407 U.S. at

530, 92 S.Ct. at 2192 ("We can do little more than identify *some* of the factors.") (emphasis added); *United States v. New Buffalo Amusement Corp.,* 600 F.2d 368, 377 (2d Cir.1979).

## A. Length of Delay

"The length of the delay is to some extent a triggering mechanism."[7] *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. A de minimis delay merits no consideration. A delay of significant duration is presumptively prejudicial and triggers consideration of the remaining three factors. Furthermore, the length of delay is, itself, relevant—the longer the delay, the more heavily it should be weighed against the government. *Terry v. Duckworth*, 715 F.2d 1217, 1220 (7th Cir.1983); *New Buffalo*, 600 F.2d at 377; *United States v. Jackson*, 542 F.2d 403, 407 (7th Cir.1976); *United States v. Macino*, 486 F.2d 750, 752 (7th Cir.1973); *McCarthy v. Manson*, 554 F.Supp. 1275, 1300 (D.Conn.1982), *aff'd on other grounds*, 714 F.2d 234 (2d Cir.1983).

The magistrate correctly concluded that the nearly eighteen-month delay in bringing petitioner's case to trial was sufficient to trigger consideration of the remaining three factors. Recommended Ruling at 11, citing *United States v. Vispi*, 545 F.2d 328, 333 (2d Cir.1976) (twenty months); *United States v. Avalos*, 541 F.2d 1100, 1111 (5th Cir.1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977) (fifteen months); *United States v. Graham*, 538 F.2d 261, 263 (9th Cir.), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 294 (1976) (twelve months); *Spina v. McQuillan*, 525 F.2d 813, 818 (2d Cir.1975) (twenty-six months); *see also McCarthy*, 554 F.Supp. at 1300 (nineteen months); *Hadley v. State of Wisconsin*, 66 Wis.2d 350, 225 N.W.2d 461 (1975) (eighteen months). Furthermore, although the delay in this case standing alone is not considered a *per se* violation of petitioner's sixth amendment right, *cf. Vispi*, 545 F.2d at 333, it is found to be sufficiently substantial that it warrants placing the burden on the state to disprove a violation. *New Buffalo*, 600 F.2d at 377; *McCarthy*, 554 F.Supp. at 1300.

## B. Assertion of Right

The magistrate correctly concluded that petitioner had frequently and unequivocally asserted his right to a speedy trial. Furthermore, the magistrate's finding of speciousness in the state's argument that petitioner failed to assert his right by neglecting to file a motion to advance, pursuant to Connecticut Practice Book § 979, is likewise correct. Petitioner's motion for a speedy trial was endorsed by the presiding criminal judge on February 10, 1982, as granted, with the caveat "that the case will not preempt other cases unless there's a compelling reason." *Flowers*, 198 Conn. at 550, 503 A.2d 1172. It would be anomalous if one's constitutional right to a speedy trial was not deemed a compelling reason to justify an immediate trial, but the filing of a motion to advance was.[8] Further, having demanded a speedy trial, it is illogical to condition his constitutional right on the additional assertion of a procedural right. Lastly, there is nothing in the record to suggest that such a motion would have resulted in an earlier trial any more than the requests made by petitioner.

At oral argument, the court questioned the adequacy of petitioner's assertion by noting that he had not sought relief before trial through a writ of habeas corpus. A petition at that time, either in state court or federal court if his state remedies had been exhausted, could have been granted conditionally, i.e., his release could have been

---

7. *Barker's* treatment of the length of delay as a triggering factor has been criticized as mitigating the importance of the delay. Uviller, *Barker v. Wingo: Speedy Trial Gets a Fast Shuffle*, 72 Colum.L.Rev. 1376, 1399–1400 (1972). As discussed *infra*, however, *Barker* has not been read so restrictively.

8. Judge Hammer noted in his Memorandum of Decision on Defendant's Motion to Dismiss, *see* Appendix D to Appellate Record at 34, that a motion to advance could serve to accelerate the trial date of those who are in custody for lack of a bond and whose right to a speedy trial might be in jeopardy. If that is the case, however, it seems curious that, when petitioner raised such facts in his several requests for a speedy trial, he was afforded no relief.

Although the Connecticut Supreme Court was presented with the argument regarding the motion to advance, it noted no specific finding in response to that argument. Instead, it decided that petitioner "frequently and unequivocally asserted his right to a speedy trial," and that this assertion weighed "heavily in his favor." *Flowers*, 198 Conn. at 545, 548, 503 A.2d 1172.

ordered if the state thereupon failed to bring him to trial by a date certain. In so doing, petitioner's rights would be honored, but without the draconian result that one lawfully convicted would be set free in response to a motion made after trial. This approach would prompt a speedy trial or, if the time for a trial were found to have expired, it could eliminate the costs and adverse effects of a trial which would have to be vacated because the accused's rights had been violated.

The viability of such an approach was noted by Judge Hammer in his Memorandum of Decision on Defendant's Motion to Dismiss. *See* Appendix D to Appellate Record at 31–33, citing *Young v. Warden,* Docket No. 266429 (Hartford/New Britain Jud. Dist., Dec. 14, 1981) (Ruling on Petitioner's Writ of Habeas Corpus); *see also* Amsterdam, *Speedy Criminal Trial, Rights and Remedies,* 27 Stanford L.Rev. 525, 535 (1975). Such a petition is not a requirement to the invocation of one's right to a speedy trial nor a prerequisite to postjudgment habeas relief. Rather, it may be one factor to be considered in the forcefulness of a defendant's assertion of his right.

Curiously, at oral argument, respondent questioned the efficacy and propriety of seeking such habeas corpus relief. Respondent's counsel furthermore disclaimed reliance on this argument as to petitioner's assertion of his right. Regardless of that waiver, however, the record amply suggests that even if petitioner's failure to seek habeas corpus relief were considered he otherwise frequently and unequivocally asserted his right.

### C. Reason for Delay

The third factor in the assessment is the reason for the delay. A trial might legitimately be delayed because of any number of factors, including resolution of motions filed by the defendant, conducting investi-gations, locating witnesses, interlocutory appeals, and the pairing and scheduling of trials of co-defendants. Just as obviously, there are illegitimate reasons for delay, i.e., tactical maneuvering by the prosecution to hinder the defense. *Barker* concluded that different weight should be assigned to different reasons:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or over-crowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker,* 407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted).

The only reason offered by the state for the delay in bringing petitioner to trial was court congestion.[9] *Flowers,* 198 Conn. at 547, 503 A.2d 1172. Petitioner's case was assigned for trial chronologically from among the cases then pending in the Hartford Superior Court.[10]

The state, partially because it was trying to remedy its backlog problem, argues that the factor of court congestion should be treated neutrally. Respondent's Brief in Opposition to the Petition at 15, citing *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. Respondent's reading of *Barker,* however, is incorrect. In discussing congestion, *Barker* called the reason neutral, i.e., the event was controlled neither by the government nor the accused. Nonetheless,

> [a] more neutral reason such as ... over-crowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with

---

**9.** The record is bereft of any other reason for the delay except from May 9, 1981, to June 1, 1981, the time it took to present petitioner in court in Connecticut after his arrest in Florida. Parenthetically, while the argument has not been relied on here, the Connecticut Supreme Court correctly decided that petitioner had not demonstrated that the State's Attorney con-trolled the docketing and scheduling for trial of the pending criminal matters. *Flowers,* 198 Conn. at 549, 503 A.2d 1172.

**10.** There was one exception which is found not be controlling. *See Flowers,* 198 Conn. at 546, 503 A.2d 1172.

the government rather than with the defendant.

*Id.* at 531, 92 S.Ct. at 2192. Court congestion is the responsibility of the government, not the accused. If the court is unable to meet its constitutional obligation, even if not by design, such failure cannot emasculate an accused's right. *United States v. McAfee,* 780 F.2d 143, 146 (1st Cir.1985), *vacated and remanded on other grounds,* —— U.S. ——, 107 S.Ct. 49, 93 L.Ed.2d 10 (1986); *United States v. Dennard,* 722 F.2d 1510, 1513 (11th Cir.1984); *Duckworth,* 715 F.2d at 1220; *New Buffalo,* 600 F.2d at 377; *United States v. Carini,* 562 F.2d 144, 149–50 (2d Cir.1977); *Vispi,* 545 F.2d at 334. Indeed, "elimination of delays caused by court congestion and administrative red tape was a major, if not *the* major, concern of Congress in passing the [federal Speedy Trial] Act," *McAfee,* 780 F.2d at 146, citing S.Rep. No. 1021, 93d Cong.2d Sess. 22, *reprinted in* A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974,* at 160 (Fed. Judicial Center 1980), codified at 18 U.S.C. § 3161.

Nevertheless, although court congestion must be assessed some positive weight, how much must be decided on the facts in each case. The reasons underlying court congestion and the action taken in response thereto must be addressed. Respondent's argument echoes the decision of the Connecticut Supreme Court, to wit, the court should favorably consider the state's efforts to reduce a longstanding criminal case backlog. Noting that the state's efforts at reducing its caseload were prompted by *McCarthy,* the Connecticut Supreme Court applauded the adoption of the Connecticut Speedy Trial Act, Conn.Gen.Stat. § 54–82*l* (effective July 1, 1983), and the reduction of the trial court's criminal docket by 800 cases in preparation for the adoption of § 54–82*l. Flowers,* 198 Conn. at 547, 503 A.2d 1172. And, rightfully so.

But, such steps do not resolve the rights of those whose trials were nonetheless delayed, although by less than had been the case before the corrective measures. Corrective measures do not excuse the state if the delay which remains exceeds that reasonably permitted under the speedy trial right. The state remains obligated "to make a diligent good faith effort to bring him ... [to] trial." *Hooey,* 393 U.S. at 383, 89 S.Ct. at 579.

Pursuant to its police powers, the state investigates, prosecutes, tries and punishes criminal misconduct. Consistent with that obligation, it must choose what conduct it defines as criminal, how forcefully it intends to enforce violations of that conduct, and how many courts, secretaries, clerks, sheriffs, prosecutors, public defenders, and judges it will provide to resolve the criminal matters it prosecutes. The choices it makes must guarantee that those who are charged with criminal misconduct are promptly afforded a forum for resolution of the charge. *See United States v. Strunk,* 467 F.2d 969, 972 (7th Cir.1972), *rev'd on other grounds,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) (lack of prosecutorial staff does not excuse delay).

The state's post-*McCarthy* efforts, while deserving of praise, were late in coming.[11] In point of fact, *McCarthy* really did not say anything that was not already known by the General Assembly, the Governor, and the Judiciary. The state's own judges flagged the issue, perhaps best articulated by the able Judge Wright in 1981, who commented, referring to facts which existed in and prior to 1980: "[T]he system will not be able to function adequately under the present conditions until a great increase is effected in the number of courtrooms, judges, state's attorneys, public defenders, investigators, sheriffs, court reporters, jails, and other supporting facilities."[12] *See* Appendix D to Appellate

---

**11.** Judge Hammer noted that many of the post-*McCarthy* reforms provided no help to Flowers:

Although, of course, this legislative recognition of the plight of defendants such as Mr. Flowers comes too late to afford a remedy for the claim of constitutional deprivation which he asserts, the fact that the legislation has

been enacted is of some significance on the issue of the reasons for the delay under the circumstances of this case.

Appendix D to Appellate Record at 30.

**12.** Judge Hammer noted:

The judges assigned to criminal cases in this judicial district are acutely aware of the fact

Record at 33, citing *Young v. Warden*, Docket No. 266429, Judicial District of Hartford/New Britain. Finding that Young, accused of murder, had "a valid complaint concerning the violations of his constitutional right to a speedy trial," he ordered that, unless Young was brought to trial by March 1, 1982, he would be released on bond pending his trial. The trial occurred on February 1, 1982; Young was acquitted.

The actions taken after *McCarthy* could have been adopted earlier. No reason for the contrary has been shown. More judges could have been appointed; more court personnel could have been hired. All judges could have been assigned to the criminal docket. More prosecutors could have been hired to handle the increased number of trials.[13] Instead, the state chose not simply to do no more, but actually reduced, proportionally, the judiciary's share of the budget. *Flowers*, 198 Conn. at 546, 503 A.2d 1172. The state charged petitioner with commission of a crime and then told him to stand in line for almost eighteen months before a forum was provided for the trial of those charges. Whatever the various branches of state government did or did not do, the result was delay for no reason of record other than that the facilities, personnel, including judges, and procedures provided by the state were inadequate to permit a trial until eighteen months after petitioner's arrest. "The worst sin toward our fellow creatures is ... to be indifferent to them."[14] George Bernard Shaw, Devils Disciple, Act II (1901).

A review of the record in this case in its totality shows—and this court can take judicial notice of the fact—that the judicial system and the prosecutorial system [in Connecticut has long been] overburdened. Although the continued improvement in the techniques of court administration, in some cases, alleviates the problems which this case demonstrates, essentially the deficiency is the result of the court system's fiscal inability to deal speedily with the problems that are presented by modern society. The judges involved in this particular case were overworked, and the court was undermanned, both in terms of judicial manpower and supporting staff. While

that they are treading on dangerous constitutional ground in view, not only of existing constitutional standards, but also of the need for meeting the even more restrictive statutory standards which will become effect on July 1, 1983.
Appendix D to Appellate Record at 31.

13. Respondent was afforded an opportunity to supplement the record by detailing efforts taken by the judiciary to ensure that Flowers' right was honored. It declined to do so.

14. While not controlling, the indifference of the Executive and Legislative Branches to the problem of court backlog in the area of civil cases is illustrative of the corresponding lack of concern manifested for criminal case congestion. In *Pellegrino v. O'Neill*, 193 Conn. 670, 480 A.2d 476 (1984), the plaintiffs sued the Governor, Treasurer and Comptroller, Chief Court Administrator, Speaker of the Connecticut House of Representatives, and the President of the Connecticut Senate claiming "that inadequate financing of the state judicial system has produced a backlog of civil jury cases." *Id.* at 671, 480 A.2d 476 (plurality opinion of Shea, J.). Though the case was decided on the basis of the absence of a justiciable issue, the statistics for obtaining a civil trial are alarming: "five years, nine months and five days in New Haven to four years, nine months and nine days in Bridge-

port." *Id.* at 673, 480 A.2d 476. Obviously, inadequate personnel and facilities for the caseload were a longstanding fact that the Connecticut Executive and Legislative Branches were willing to tolerate and unwilling to solve by adequate funding of the Judicial Department. To be alleged in 1983, these delays existed as early as 1977, since backlogs result from an accumulation of undecided cases over a period of time. It is thus no wonder that the Judicial Department may not have assigned all trial judges to criminal cases while petitioner's case was pending. Criminal cases were not the only matters crying for disposition in the face of the suggested paucity of funds made available to the judiciary by the Executive and Legislative Branches seemingly in at least the mid to latter 1970s. The case is further noteworthy as, in dissent, Chief Justice Peters did not accept the majority's denial of justiciability and she framed the problem nicely by her willingness to allow the plaintiffs "to make an evidentiary showing that the legislature has violated the state constitution in failing to appropriate sufficient funds for the constitutionally mandated judicial business of this state." *Id.* at 689, 480 A.2d 476 (dissenting opinion of Peters, C.J.). Quite clearly, the state had far too long ignored its obligation.

the court system itself has great responsibility to see to it that what resources it has operate as efficiently and as justly as possible, constitutional liberties will only be preserved if the legislature places at the disposal of the judicial branch of government adequate resources to meet the challenges that are daily apparent in our courts.

*Hadley,* 66 Wis.2d 350, 225 N.W.2d 461 at 469–70.

[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn. As the Court points out, this approach also subverts the State's own goals in seeking to enforce its criminal laws.

*Barker,* 407 U.S. at 538, 92 S.Ct. at 2196 (White, J., concurring).

In addressing petitioner's appeal, the Connecticut Supreme Court commented: "The ingenuous assertion that the *defendant* could have been brought to trial sooner had the system been disposed to do so might honestly be said of any defendant awaiting trial during the period in question, and patently ignores the complex administrative difficulties which faced our then surely overtaxed criminal justice resources." *Flowers,* 198 Conn. at 547, 503 A.2d 1172. It is inappropriate to refuse to honor the speedy trial right of one accused merely because he is one of many being similarly denied. The Constitution imposes the burden on the government to deal with administrative difficulties. While the delay in this case was for a neutral reason, unlike the prosecutorial tactical maneuvering demonstrated as partially responsible for the delay in *McCarthy,* it was nevertheless a delay unresolved by the state. This factor must accordingly be weighted against respondent.[15]

## D. Prejudice

*Barker* identified three interests which were to be protected by the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Petitioner argues that prejudice should be presumed inasmuch as he has demonstrated that the scales tip in his favor on each of these factors. It has been held that "there must be some point of coalescence of the other three factors in a movant's favor, at which prejudice—either actual or presumed—becomes totally irrelevant." *Hoskins v. Wainwright,* 485 F.2d 1186, 1192 (5th Cir.1973). *See also Dennard,* 722 F.2d at 1513 ("when the first three *Barker* factors weigh heavily against the government, the defendant need not demonstrate actual prejudice"); *Prince v. State of Alabama,* 507 F.2d 693, 706–07 (5th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed. 108 (1975) ("Prejudice is immaterial where consideration of the other three factors ... coalesce in the defendant's favor."); *McCarthy,* 554 F.Supp. at 1305 ("in view of the large amount of weight accorded these three factors on the acts of this particular case, it seems clear that an affirmative demonstration of prejudice is not necessary). It is important to note, however, that neither the Court of Appeals for the Second Circuit nor the United States Supreme Court has as yet specifically endorsed the coalescence theory. Although the courts which have adopted the theory have cited *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973), as supportive, it is noteworthy that in *Moore* the Supreme Court was responding to the Arizona Supreme Court's requirement that "a showing of prejudice *to the defense* at trial was

---

**15.** Respondent's argument that it should be provided a certain amount of grace during the period in which it was attempting to phase-in the post-*McCarthy* reforms, rings hollow. Flowers did not cause the backlog. The state did. His rights should not be qualified by its failure. *United States v. Tantalo,* 680 F.2d 903, 909 (2d Cir.1982), and *United States v. McGrath,* 622

F.2d 36, 39 (2d Cir.1980), do not require an opposite result as those cases concerned implementation of the federal Speedy Trial Act which abruptly created an abbreviated time for bringing a case to trial. *See* 18 U.S.C. § 3163(c) (providing for phase-in period). The Constitution has existed for 200 years. The phase-in period began, if it occurred at all, in 1787.

essential to establish a federal speedy trial claim." *Id.* at 25, 94 S.Ct. at 189 (emphasis added). Moore did not hold that the factor should be excluded. Rather, it reaffirmed the four-prong balancing test enunciated in *Barker.*

Given the definition of prejudice provided in *Barker* and the holding in *Moore,* the coalescence theory serves little if any purpose. Obviously, "the time spent in jail awaiting trial has a detrimental impact on the accused. It often means loss of a job; it disrupts timely life; and it enforces idleness." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Just as obviously, "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion and often hostility." *Id.* Thus, if it is found that the time awaiting trial, the length of the delay, is presumptively prejudicial and the accused's assertions of his rights and the reason for the delay are held to weigh substantially in the petitioner's behalf, then prejudice to the defense may not be necessary, as the weight of the other failures alone may result in a finding of a violation under the *Barker* analysis.[16] Furthermore, by hinging the coalescence theory on some point at which the first three factors prove to be so significant as to render proof of the fourth factor unnecessary adds nothing to the analysis. It merely constitutes a finding that resolution of the fourth factor would not be weighty enough to tip the scales in favor of the government in the face of the weight of the other factors which favor the petitioner.

*Barker* teaches, however, that all relevant factors should be considered and, even though consideration of the fourth factor, prejudice, would not result in a different decision, it must be considered. *Barker* held prejudice to the defense to be the most important of the three factors because "the inability of a defendant adequately to prepare his [defense] skews the fairness of the entire system." *Id.* at 532, 92 S.Ct. at 2193. A delay which resulted in a prejudice to the petitioner's defense would be accorded more weight than a delay which had no effect on the defense. In the former scenario, the weight would go heavily against the state, in the latter the weight would go against neither the state nor the accused. Ignoring this factor is inconsistent with the court's charge to "engage in a difficult and sensitive balancing process" when determining speedy trial claims. *Moore,* 414 U.S. at 26, 94 S.Ct. at 189.

Petitioner has conceded that there was no actual prejudice to his defense. Nevertheless, for eighteen months he had to live with severe restrictions on his rights while living under a cloud caused by the accusation made against him. Using the *Barker* analysis, this factor weighs in his favor.

### E. Other Factors

The magistrate also considered the effect of *McCarthy* on the state system and found that granting petitioner's request would not have the same societal impact. It is true that the impact on society by releasing a convicted criminal because his rights were violated may not be as pronounced as it was in *McCarthy.* As the magistrate noted, releasing McCarthy woke people up. Recommended Ruling at 21. But an accused's speedy trial right

---

**16.** The treatment of oppressive pretrial incarceration and anxiety as subjective factors is problematic. It requires comparison of the oppressiveness between jail A and jail B, of the oppressiveness caused to a man who had no family, no home, and no job to the man who supported a family on his steady salary, of the anxiety caused to the hardened criminal versus the first-time offender. These considerations are too susceptible to imprecision to permit or lead to rational decision making.

The oppressiveness of pretrial incarceration and the anxiety caused by an accusation are really best treated as a given. They do not comport readily with the broad concept of "prejudice." Perhaps better considered as an adjunct of the impingement on one's freedom and liberty or made on implicit element of the first factor, to be weighed in the same proportions as the length of the delay, these considerations should somehow be treated separately from the prejudice-to-the-defense factor.

Nevertheless, the record is clear that petitioner suffered some degree of anxiety and some degree of oppressiveness. He was deprived of his rights for eighteen months. That is a matter which should be weighted against the government. *Marion,* 404 U.S. at 320, 92 S.Ct. at 463. *See also United States v. Gonzales Claudio,* 806 F.2d 334, 339 (2d Cir.1986) (at some point, length of pretrial detention raises constitutional issues).

cannot be measured by the impact on the community of a finding that the right has been denied.[17] One who has been convicted should have no greater nor lesser rights than any one else. Indeed, *McCarthy* serves no purpose if it stands merely for the principle that periodically the state should be reminded of its obligation, viz, woken up. The Constitution requires a consistent and unbending recognition of the rights of the accused.

*Conclusion*

The state has the right to promote law and order by criminalizing conduct, charging and adjudicating persons with such conduct and imposing punishment on conviction. It is required to conduct that process in a reasonably expeditious fashion. Whether it does so within the necessary time constrictions depends on the facts of each case. Using the *Barker* test, the factors may tip to one side or the other. If their cumulative weight so far outweighs the state's right to a reasonable opportunity to enforce its laws, then the state's right must yield to the right of the individual. Though the state would then lose its right to try an accused or to enforce a conviction, such is the balancing scheme of the Constitution. The right of the individual is a check on the abuse of power by government.

*Barker* requires a balancing of all relevant factors when determining whether one's constitutional right to a speedy trial has been violated. Unlike calibrated weights, intangible factors like the degree of prejudice do not readily lend themselves to mathematical quantification. Here, the delay was substantial. Petitioner repeatedly asserted his rights. The reason for the delay lies solely with the state and while not tainted by improper motivation nonetheless is weighed against the state. And, though his defense was not prejudiced, the length and oppressive nature of the eighteen month loss of his freedom also weighs against the state. Thus, as all of the

factors weigh against the state, the cumulative effect mandates a finding that his right to a speedy trial was violated.

Respondent took nearly eighteen months to bring petitioner to trial and offers only the excuse that it had a crowded calendar. That a backlog existed is not in doubt, but it cannot justify the violation of petitioner's constitutional right. "Nothing can destroy a government more quickly than its failure to observe its own law, or worse, its disregard of the charter of its existence." *Mapp v. Ohio,* 367 U.S. 643, 659, 81 S.Ct. 1684, 1694, 6 L.Ed.2d 1081 (1961). Respondent failed to honor its constitutional obligation.

Accordingly, upon reconsideration, the prior acceptance, absent opposition, of the magistrate's Recommended Ruling is vacated. The Recommended Ruling is not adopted. The petition for a writ of habeas corpus is granted. Petitioner is hereby ordered released, subject to a stay of this order for thirty (30) days for the filing of an appeal, if properly sought under the federal rules.

SO ORDERED.

---

**17.** Such a result could lead to inconsistent applications of the right. A community would probably react more negatively to the release of one convicted than of one yet untried. Similarly, a community would also probably react more negatively to the release of one charged or con-

victed of murder than to one charged or convicted of petty thievery. That community reaction would vary augments the rationale that it should play no meaningful role in deciding if the delay involved constituted a denial of the right.